589 So.2d 1153 (1991)
Judith Romano, wife of Dean Wayne HALVERSON
v.
Dean Wayne HALVERSON.
No. 91-CA-270.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 1991.
*1154 Henry W. Kinney, III, New Orleans, for plaintiff, appellee.
Lawrence J. McGrath, II, New Orleans, for defendant, appellant.
Before GRISBAUM and DUFRESNE, JJ., and FINK, J. Pro Tem.
ELORA C. FINK, Judge Pro Tem.
This appeal arises from a dispute between Dean W. Halverson and Judith Romano Peck (formerly Mrs. Halverson) over the division of Dean Halverson's pension plan benefits in the community property partition following their divorce. Mr. Halverson has appealed from a judgment of November 27, 1990, in favor of Mrs. Peck. We affirm, for the reasons that follow.
At issue are, first, whether the trial court erred in calculating the amount of the pension plan benefits to which Mrs. Peck is entitled; second, whether the court erred in ruling that Mrs. Peck is entitled to begin receiving her interest in the pension plan immediately; third, whether the court erred in refusing to order that Mr. Halverson's separate estate is entitled to full reimbursement for his monthly payments on the family home after the parties ended their community regime.
Mr. Halverson has been employed as a pilot for Delta Airlines since March 4, 1964. He and Mrs. Peck were married on October 28, 1967, and a community property regime existed between the parties until their divorce on November 13, 1979. During his employment with Delta, Mr. Halverson has been a participant in the Delta Pilots' Retirement Plan.

ASSIGNMENT OF ERROR NUMBER ONE
The appellant asserts first that the trial court erred in using twenty-five years of total creditable service as the denominator to determine the amount of benefits payable to Mrs. Peck. Because Mr. Halverson is still an employee of Delta, he contends the actual number of years attributable to his total creditable service is not yet fixed, so that the pension benefits due Mrs. Peck are not determinable.
In the judgment on appeal, Mrs. Peck was awarded a 24.11% interest in the pension plan, a figure the court derived by applying part of the formula set out in Sims v. Sims, 358 So.2d 919 (La.1978). In the Sims case, our Supreme Court stated:
[A]t dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit-sharing plan or contract, if and when they become payable, with the spouse's interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
The Sims court set out the following formula to calculate a non-employed spouse's interest in each installment of pension benefits when they become payable:
 Portion of pension attributable
 to creditable service during annuity
 existence of community × ½ × (or lump-sum
 --------------------------------
 Pension attributable to total payment)
 service (still not determined)
Here, the trial judge used as the numerator the number of years of marriage12.055. The parties agree this figure is correct. As the denominator the court used 25 years, which the court determined was the maximum amount of creditable service.
*1155 The Delta Plan is a "defined benefit" plan. It provides the option of a monthly annuity or a joint and survivor benefit to Delta's vested employees after they are separated from service by retirement, termination or death. Retirement is mandatory at age 60, but the monthly annuity is available (at a discounted amount of 3% per year for every year under 60) to employees who have reached age 50 and who are separated from their employment. The maximum monthly benefit is calculated, for employees with at least 25 years of credited service, at 60% of the average yearly earnings or "Final-Average Earnings," defined as the highest 36 consecutive months' earnings during the participant's last ten consecutive years of employment.
At the time of trial, Mr. Halverson was fifty-three years of age; his mandatory retirement date is October 2, 1996, when he will reach age 60. He testified he is still employed by Delta and that he plans to retire at age 60. On the date of trial he had been employed by Delta for 26 years.
We conclude the trial court was correct in finding that 25 years was the maximum amount of creditable service Mr. Halverson could earn under the plan. Although the dollar amount of his retirement benefits may increase if his salary increases, the total proportion to which he is entitled cannot increase because it is at the maximum now, 60%.

ASSIGNMENT OF ERROR NUMBER TWO
Mr. Halverson's second contention is that the trial court erred in ruling that Mrs. Peck is entitled to remove her interest in his pension plan immediately.
In Sims v. Sims, supra, the court ruled that the wife could not be forced to have her interest in her husband's pension rights valued at one-half its cash withdrawal value at the date the community was dissolved. Rather, the court concluded, when a former spouse-in-community's pension benefits become due, so as then to have a determinative value, the non-employed spouse is entitled to receive the proportion of the benefits attributable to the other spouse's employment during the existence of the community. The court stated its decree would recognize the wife's proportionate interest in the retirement annuities, "if and when they become payable," without attempting to fix a present monetary value for the interest because it would have none until the husband actually retired or terminated his employment. 358 So.2d at 922-923.
Based on the "if and when they become payable" phrase used by the Sims court, Mr. Halverson contends Mrs. Peck cannot receive her share of his pension benefits until he actually begins drawing his pension. He contends the amount of the benefits will not be fixed and determinable until he has retired.
Mrs. Peck, however, asserts that an amount can be fixed because Mr. Halverson has served three consecutive years of his last ten years of employment. Thus, his minimum Final Average Earnings can be calculated based on those three years, so that her share of pension benefits can be calculated at their present value as if they were now payable to Mr. Halverson. She is willing to waive her right to prospective higher benefits in order to receive immediate disbursement of the funds due her.
For assistance in understanding the pension plan and in determining how the Sims formula should be applied, the trial court appointed its own expert, Professor Dian Arruebarrena of Loyola School of Law. She testified as follows:
In the Sims case the court concluded that to assure fairness in valuing pension benefits pursuant to a community property partition, the parties must wait until the employed spouse actually retires. Professor Arruebarrena felt, however, that the Halverson case should be considered an exception to the Sims rule because the factors involved will allow Mrs. Peck to receive her share of the pension immediately without prejudice to Mr. Halverson's interests. Arruebarrena explained the factors she considered:

First, under the Delta Pilots' Retirement Plan as applied to Mr. Halverson, the Sims formula is fixed; the denominator *1156 of the formula must be 25, because that is the greatest number of years of service creditable under the Plan. Upon achieving 25 years of service, Mr. Halverson became entitled to 60% of his Final-Average Earnings upon retirement. No matter how many more years he works that percentage figure will not increase, although the actual dollar amount of his pension will increase if his earnings increase. Waiting until he retires will not dilute Mrs. Peck's proportionate share, earned during their 12.055 years of marriage.

Second, because Mr. Halverson is 53, not only is he within his last ten years of employment prior to retirement, but also an average earnings figure can be computed for the last three years that would be the minimum for his Final-Average Earnings under the Plan's provisions. (Because his Final-Average Earnings are computed from his highest 36 months of earnings, even if his income decreases between the time of trial and the time he retires his Final-Average Earnings could be calculated based on the three years prior to trial.)

Third, Mr. Halverson has attained the earliest possible retirement age and thus is entitled to retire.

Fourth, under the Retirement Equity Act of 1984 (Pub.L. 98-397, 98 Stat. 1426), a non-employed spouse can receive her share of the pension directly from the pension administrator prior to the employed spouse's retirement if state law permits such an arrangement.

Fifth, distribution of Mrs. Peck's share at its present value is not unfair to Mrs. Peck if she is willing to waive her right to future increases in order to receive the benefits immediately.

Finally, the court can structure a Qualified Domestic Relations Order (required by the Employee Retirement Income Security Act, Pub.L. 93-406, 88 Stat. 829, to partition pension benefits) so that the amount Mrs. Peck receives is no greater than the amount she might receive if she were required to wait until Mr. Halverson retires. This could be done by assessing against her share the early retirement penalty of 3% per year for every year prior to Mr. Halverson's reaching age 60 that she begins drawing her share of the benefits.
Professor Arruebarrena mentioned, in addition, that if Mrs. Peck is required to wait for her share until Mr. Halverson retires and if he dies prior to retirement, Mrs. Peck will receive nothing; her right to her share of his pension will lapse upon his death.
Based on these factors, Professor Arruebarrena stated, she felt this case is a "likely candidate to be an exception to Sims." The trial court agreed with her, hence the ruling of which the appellant complains.
In Hare v. Hodgins, 586 So.2d 118 (La. 1991), rendered the day before this case was submitted to us for decision, our Supreme Court cautioned lower courts against a too-literal application of the Sims court's statement that no value can be fixed upon an employee's pension right until the employee is separated from the service, dies, retires or becomes disabled. The court stated:
The general rules for the partition of community property, however, do not address all of the problematic ramifications of classifying, valuating and distributing each spouse's interest in pension benefits which have been earned by one spouse partly during the marriage and partly before or after. In such cases, the pension benefits are composed of the separate property interest of the employee spouse in addition to the community interest. Furthermore, there is no custom from which rules can be derived for each particular situation. Accordingly, in the present case and others a court is bound to proceed and decide equitably to some extent, making resort to justice, reason and prevailing usages. * * *
Hare v. Hodgins, supra, at p. 123.
The court said further:
In general, the valuation and division of pension rights is a matter for the trial court's discretion, but usually calls upon the court to evaluate various alternatives developed and approved by the appellate *1157 opinions and scholarly commentary. * * *
A trial court can attempt to calculate the "present value" of pension benefits projected for the employee spouse's future retirement years. Under this approach, the benefits payable must be adjusted and discounted for contingencies such as mortality, interest, probability of vesting, probability of continued employment and retirement life expectancy. * * *
Hare v. Hodgins, supra, at p. 124.
The court disagreed with the trial court's conclusion that a partitioning court is bound to use the fixed percentage formula in every case analogous to Sims.
In retrospect, the statement was unfortunate. If it was intended to signify that the employer could not be required to pay benefits until due under its contractual obligation, the statement was correct but ambiguous. But if it was meant to indicate that a pension right could not be valuated for purposes of voluntary or judicial partition prior to maturity the statement must be acknowledged as error.
* * * * * *
In fact, La.R.S. 9:2801 which was enacted subsequent to Sims affords the partitioning tribunal a great deal of flexibility and clearly implies that the goals of equality and equity require that no one method should be used to the exclusion of other apportionment techniques. Moreover, our study of legal developments both here and in other jurisdictions convinces us that because of the great variations in pension plans and communal situations no one method can accomplish justice in every case. It is essential, therefore, that courts be able to take advantage of reasonable alternatives and adjustments in order to accomplish an equal distribution in an equitable manner in all situations. * * *
Hare v. Hodgins, supra, at p. 126-27.
Considering these factors, we conclude the trial court was correct in ruling that Mrs. Peck is entitled to begin drawing her share of the pension immediately. This conclusion does not violate the rule enunciated in the Sims case, because the purpose of that rule was to insure fairness to both spouses. The decision here also insures fairness to both spouses, in view of Mrs. Peck's willingness to accept a lesser pension than she would receive if she waited until Mr. Halverson retires, and because payment of her share now, in the manner explained by Arruebarrena, will not lessen Mr. Halverson's share.

ASSIGNMENT OF ERROR NUMBER THREE
Last, the appellant asserts the trial court erred in refusing to fully reimburse his separate estate for the monthly mortgage payments on the family home he made after the termination of the community.
In Lowe v. Lowe, 463 So.2d 755 (La.App. 5 Cir.1985), where a husband had been ordered in the separation and the divorce judgments to make mortgage payments as part of his child support, this Court held he was entitled to reimbursement by the community for the amount by which his mortgage payments had reduced the principal debt, but not for monies expended for insurance, taxes, or maintenance of the house. Lowe v. Lowe, supra. The rationale for this ruling was that payment of the ancillary items accomplishes nothing other than payment, in part, for the use of a property, while the payments on mortgage principal are an investment in the property.
Here, Mr. Halverson was ordered in the divorce judgment of June 10, 1985, to pay child support of $1,000 per month as well as the monthly house note on the former matrimonial regime. The payments were intended as part of the child support obligation. Therefore, the trial court did not err in finding Mr. Halverson entitled to a credit for one-half of the principal payments made since June 10, 1985.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are *1158 assessed against the appellant, Dean Wayne Halverson.
AFFIRMED.