697 So.2d 275 (1997)
Charlene Arcement BLANCHARD
v.
Wayne P. BLANCHARD.
No. 96-CA-1031.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 1997.
Rehearing Denied August 15, 1997.
Ernest E. Barrow, II, Gretna, for Appellant Charlene Arcement Blanchard.
F.L. Desalvo, Gretna, for Appellee Wayne P. Blanchard.
Before GRISBAUM, DUFRESNE, GOTHARD, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
Plaintiff, Charlene Arcement Blanchard, appeals from a partition judgment rendered in favor of her former husband, defendant, Wayne P. Blanchard. For the reasons which follow, we vacate in part and affirm in part and remand.
The parties were divorced on March 3, 1993. The hearing to partition the community property was held on July 3, 1996. The two major community assets with which we are concerned are the former family home, valued at $44,000, and plaintiff's pension account with the Teacher's Retirement System, assigned a present cash value of $50,267.[1] Plaintiff had requested that the two major assets be divided equally, in half, between the parties, with a qualified domestic order transferring one-half of the pension account to defendant and then either a buy-out or sale by licitation of the home. Defendant requested that the assets be divided by giving *276 plaintiff the pension account and by giving him full ownership of the home. Plaintiff protested this manner of division, arguing that it was not equitable because of the vast difference in the character of the two assets. The pension represented merely a hope to come in the future, if or when she retires and if she remains alive to collect it. The house, on the other hand, has a present value that can be used now by conversion to cash through sale, mortgage or rental and is heritable.
After hearing, the trial court adopted the recommendation of the special master appointed to review the case and divided the assets according to defendant's request, the pension to plaintiff and the home to defendant, with a monetary award of $3,079.50 to defendant to balance the asset valuation. It is from this judgment that plaintiff now appeals.
Plaintiff's main argument on appeal concerns the inequity of the trial court division of the assets. She argues that the assets are completely different in character and kind and, therefore, not susceptible of division in the manner ordered by the trial court, with one asset being awarded to each party. She points out that the pension is an incorporeal right to future benefits that is contingent upon many circumstances. Its true value is speculative at best. The home, however, is a corporeal with a marketable and redeemable fixed present cash value that can be used immediately.
Defendant argues that the trial court judgment is correct. He argues that the assets were valued and then divided equally between the parties based on those values. Defendant contends that partitioning the community is a matter within the discretion of the trial judge which, under La. R.S. 9:2801, is vast and extremely flexible. The only limiting factors are that the trial court equalize net values, create a division that avoids arbitrarily saddling one party with an inequitable asset, avoid undue harm to either party and create a partition that provides overall fairness. Defendant argues that the trial court complied with the statute in this case.
The partitioning of community property is now governed by La. R.S. 9:2801 which was enacted in 1982 and, as amended, now provides in pertinent part:

When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
(4) The court shall then partition the community in accordance with the following rules:

(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.

(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.

In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or *277 other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
(d) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.
(e) Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset cannot be allocated, assigned by the drawing of lots, or sold at private sale. (Emphasis provided.)
The question presented in the instant case is how this statute applies to the partitioning of the community property where the only two major assets are a pension right and a home.
Historically, the courts have wrestled with the problem of how and when to partition the spouses' respective rights to a pension plan acquired either in whole or in part during the marriage. See Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir.1975); Lynch v. Lawrence, 293 So.2d 598 (La.App. 4th Cir. 1974), writs denied, 295 So.2d 809, 814 (La. 1974); Langlinais v. David, 289 So.2d 343 (La.App. 3rd Cir.1974); Hamilton v. Hamilton, 258 So.2d 661 (La.App. 3rd Cir.1972); Laffitte v. Laffitte, 253 So.2d 120 (La.App. 2nd Cir.1971) and Laffitte v. Laffitte, 232 So.2d 92 (La.App. 2nd Cir.1970).[2]
The Supreme Court first tried to clarify the problems presented in the valuation of the non-employed spouse's interest in the pension and the time of division of the asset in T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976). However, that case involved a matured pension, that is, the employee had died and all the rights under the pension plan were mature and fixed when the court considered the case. In T.L. James, the court, on rehearing, through Justice Tate, emphasized that the community asset consisted of the rights acquired by the employee over time rather than just the proceeds of the plan. The court fashioned a formula for apportioning the respective rights of all parties based upon the total contributions to the pension plans during the employee's entire service life.
However, because T.L. James involved a matured pension plan, terminated by death of the employee, and was a defined contribution plan, problems with the formula quickly arose. The primary issue concerned whether a spouse could obtain a present accounting for his or her interests in the pension which had not yet matured or whether the non-employee spouse would only be allowed to receive his or her share when the employee spouse received his or her share, that is, "if, as and when" the employee spouse actually received the benefits.
Shortly thereafter, the Supreme Court considered a second case, Sims v. Sims, 358 So.2d 919 (La.1978), now bringing before the Court the unanswered questions in T.L. James of how these principles would apply where the pension rights were unmatured, that is, the employee's interest in the plan had not vested and the pension benefits were not yet due and owing. In Sims, the court, again with Justice Tate authoring the opinion, reversed the lower court decision which had ordered a present accounting based on the amount of the employee's contribution to the plan. The court reaffirmed its reasoning in T.L. James, finding that "[t]he community interest stems not only from contributions *278 made by community funds, but also by reason of any right to receive proceeds attributable to such employment during the community (i.e., as an asset `acquire[d] during the marriage,' Civil Code Article 2402) whether based on the community's contributions or not. T.L. James & Co., Inc. v. Montgomery." Sims, supra, at 921. The court held that it was the right to share in the pension plan that constituted the community asset even though, at the time of the termination of the community "the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time." Sims, supra, at 922. Finally, the court announced a new formula for valuing the pension rights. The fraction created consists of a numerator, representing the amount of time during the community that the employee spouse participated in the pension plan, and a denominator, representing the total amount of service time for which the employee is credited in the pension plan. The payment to the non-employed spouse was due "if, as and when" benefits were paid to the employee spouse. The court noted that the recognition of the respective interests of the spouses in the non-merchantable asset in this manner was analogous to a partition in kind. The Sims formula for defined benefit plans and the T.L. James formula for defined contribution plans became the exclusive methods for apportioning and distributing the community interest in a pension plan and remained so until 1991, when the Supreme Court again revisited the pension problem in Hare v. Hodgins, 586 So.2d 118 (La.1991).
In Hare, the pension rights issue involved a matured pension. The court was concerned that a rigid application of the Sims formula to that situation might not produce the most equitable result. In addressing that issue the court also noted, in dicta, that although the Sims formula was one of the principal methods of apportioning pension benefits, it was not the only method by which unmatured pension rights could be valued. The court expressly approved use of the "present value method."
Under the "present value method" the projected pension benefits for the employee's future retirement are valued at present and then they "must be adjusted and discounted for contingencies such as mortality, interest, probability of vesting, probability of continued employment and retirement life expectancy." Hare, supra at 124. The value, after being determined by the court, is attributed to the employee spouse and used to award offsetting property to the non-employee spouse in the community property partition.
The alternative approach of apportioning pension rights as set out in Sims, also known as the "fixed percentage" method, is to determine the fixed percentage of benefits to which the non-employee spouse is entitled of any future payments the employee spouse receives under the plan, payable "if, as and when" paid to the pensioner. As a general rule, the percentage is based on a fraction arrived at by dividing the length of time worked under the plan during marriage by the total length of time worked toward earning the pension. The fixed percentage method is to be used when the calculation of the present value of benefits will be too speculative or if the marital estate does not include sufficient equivalent property to satisfy the claim of the non-employee spouse or cause undue hardship to the employee spouse. Hare v. Hodgins, supra at 125.
Thus, under La. R.S. 9:2801 and the variations added to the Sims approach by Hare, the trial court, in considering a community property partition involving pension rights, has the discretion to make an equitable determination on a case by case basis, provided that each spouse receives property of an equal net value, considering the nature and source of the asset. La. R.S. 9:2801(4)(b) & (c). In other words, the Sims fixed percentage formula is no longer the only acceptable method for apportioning pension rights between spouses. In the appropriate case, where the calculation of the present value of benefits is not too speculative, where the pension rights can be valued accurately and where the marital estate includes sufficient equivalent property to satisfy the claim of the non-employee spouse without undue *279 hardship to the employee spouse, the present value method could be used.
Applying these precepts to the instant case, we find that the trial court erred in awarding the pension plan to plaintiff and the only other major asset, the house, to defendant along with a $3,079.50 monetary award to balance the value of the assets. There were only two major community assets, the former family home and plaintiff's pension. The home was valued at $44,000. The pension plan was given a "present value" of $50,267.[3] The house is a corporeal with a present marketable and redeemable value. It is susceptible of present conversion into cash either by sale, mortgage or rental and it is a heritable asset. The pension, on the other hand, is not presently marketable or redeemable. Its value at fruition is highly speculative at best, considering plaintiff's age, her years of service, the likelihood of her continued employment, and her life expectancy. Furthermore, it is only heritable, once her children reach age 18 or 23 if full time students, to the extent of her cash contributions ($20,085.75), not to the extent of the "present value" of the plan ($50,267) assigned by the trial court herein. The two assets are so different in kind and character that they cannot be viewed as having an equal net value at this time. Consequently, distribution of the assets, one to each party, is not equitable. Thus, when we consider the speculative status of plaintiff's pension rights at this time, the difference in the character and nature of the two assets and the lack of any balancing community assets, it is clear that this case is simply not an appropriate one for use of the present value method in apportioning the pension rights.
This court has previously departed from a rigid application of the Sims "if, as and when" approach in the case of Halverson v. Halverson, 589 So.2d 1153 (La.App. 5th Cir. 1991), writs denied, 600 So.2d 655 (La.1992). In Halverson, virtually all of the contingencies to which the employee spouse's pension benefits were subject had been accomplished.[4] To the extent that they were not, the non-employee spouse was willing to forego the advantages of any remaining contingencies in favor of immediate partition of the asset. Further, the immediate transfer to the non-employee spouse of her rights in the pension was accomplished without assigning the entire value of the pension to the employee spouse and an offsetting amount of property to the non-employee spouse. Thus, Halverson proved to be the "appropriate" case for departing from the Sims formula. The instant case is clearly distinguishable from Halverson, however, and a different result is mandated.
In this case, contrary to Halverson, virtually all of the contingencies to which the employee spouse's pension benefits are subject, remain. The non-employee spouse's proportionate interest in the ultimate benefits is not fixed, nor is the dollar amount of the actual pension benefit. The employee has not yet reached retirement age and it is totally speculative how long the employee will work before retiring even after she reaches the minimum retirement age. Further, to accomplish a present transfer of the pension rights, would require, as the trial court did, assessing the entire value of the pension to the employee spouse and the rest of the former community property to the non-employee spouse, with a monetary award rendered against her as well.
Therefore, we conclude that, considering the nature and character of the only two *280 assets being partitioned, an unmatured pension plan, where virtually none of the contingencies to which payment of the pension benefits are subject have been fulfilled, and a house, division of the assets by giving one to each spouse with a monetary award to the defendant does not comport with the statutory requirement that the spouses receive property of an equal net value. Thus, we find that this is not an appropriate case for partitioning the pension rights by the present value method. Rather, given the circumstances of this case, the fixed percentage method of apportioning the pension rights, as set out in Sims, is the method which should be used in this case in order to properly assure the protection of the legitimate interests of both spouses.
However, our conclusion concerning the pension rights does not automatically require that the trial court, on remand, order the sale of the family home. The trial court, under La. R.S. 9:2801, must still consider all of the factors that bear upon the decision of how that asset should be partitioned, including the nature and source of the asset, the economic condition of each spouse and any other relevant circumstances, including, in this case, that the house has been in defendant's family since he was a small boy. La. R.S. 9:2801(4)(c). The trial court has the discretion, for example, if appropriate, to allocate the asset to one spouse while "order[ing] the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct." La. R.S. 9:2801(4)(c). Unfortunately, the record before us is void of any evidence relating to these factors, necessitating a remand for appropriate consideration in an evidentiary hearing.
Accordingly, for the reasons set out above, we reverse the trial court judgment partitioning the community property, insofar as it awarded the pension to plaintiff and the house plus $3,079 to defendant, we affirm the judgment insofar as it divided the furniture, automobile and truck between the parties, and remand the case to the trial court for further proceedings consistent with the views expressed herein, including issuance of a qualified domestic order transferring to defendant, in accordance with Sims, his part of the pension plan.
REVERSED IN PART; AFFIRMED IN PART AND REMANDED.
GRISBAUM and DUFRESNE, JJ., dissent.
DUFRESNE, Judge, dissenting.
I respectfully dissent and would affirm the judgment of the trial court in its entirety.
NOTES
[1] The only other community assets covered in the partition judgment were furniture (equally divided between the parties), an automobile with a stipulated value of $100 (awarded to plaintiff) and a truck with a stipulated value of $3,200 (awarded to defendant). Although this was not raised as an issue on appeal, we note an apparent $3,100 discrepancy in the values received by each party.
[2] For an excellent overview and analysis of the history, as well as the possible future, of partitioning the community interest in a pension plan, see Katherine Shaw Spaht, To Divide or Not to Divide the Community Interest in an Unmatured Pension: Present Cash Value Versus Fixed Percentage, 53 La. L.Rev. 753 (1993) and Dian Tooley Arruebarrena, Applying Louisiana's Community Property Principles to Pensions, 33 Loy. L.Rev. 241 (1987).
[3] It must be noted that the parties have not contested the valuation of the pension plan, although the value used by the trial court pertained to the value in year 2004 and there are no details provided as to how this value was calculated. In other words, there is no showing in this record, if or how the present value of the pension was discounted for the contingencies listed in Hare, such as mortality, interest, probability of vesting, probability of continued employment and retirement life expectancy.
[4] The non-employee spouse's proportionate interest in the ultimate benefits was fixed and could not be diluted by the employee spouse's continued employment, because the plan provided for a maximum of 25 creditable years and the employee spouse had worked under the plan for 26 years at the time of the hearing on the partition. Under the plan, the minimum dollar amount of the pension could be calculated and the non-employee spouse agreed to waive her right to any increases. The employee spouse had reached retirement age and was entitled to retire and receive his pension benefits.