737 So.2d 785 (1999)
Thomas F. CRAIS, Jr.
v.
Bonnie Mary Burke CRAIS.
No. 98-CA-1477
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1999.
Rehearing Denied February 17, 1999.
Writ Denied May 14, 1999.
*786 Ross P. Ladart, Gretna, Louisiana, Attorney for Plaintiff-Appellant Thomas F. Crais, Jr.
D. Douglas Howard, Jr., Danyelle M. Taylor, New Orleans, Louisiana, Attorneys for Defendant-Appellee Bonnie Mary Burke Crais.
Court composed of Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN.
KLEES, Judge.
This is an appeal from a judgment of the trial court which allocates and distributes the liabilities and assets of the former community property of Thomas F. Crais, Jr. and Bonnie Mary Burke Crais. Thomas F. Crais, Jr., appellant, argues that the trial court did not have subject matter jurisdiction of this matter based on orders of the United States Bankruptcy Court. Appellant also contends that the trial court erred in its valuation of the former community and in appointing a special master in this case.

Facts and Procedural History
Dr. Thomas F. Crais, Jr. and Bonnie Burke Crais were married in 1968 and had three children. On January 24, 1992, Dr. Crais filed a petition for divorce on the basis that the parties had lived separate and apart for a period of six months. In July of 1992, Mrs. Crais was awarded custody of the children, and the parties subsequently obtained a judgment of divorce on January 6, 1993. A trial on the issue of fault was held on February 8, 1993, and Dr. Crais was found to be at fault in the dissolution of the marriage. Dr. Crais subsequently filed a petition to partition the community property, and the trial court held a trial on this and other issues *787 on April 8, 1994. By judgment dated May 16, 1994, the court ordered Dr. Crais to pay child support and permanent alimony, and the trial court further valued the community at $237,991.00, to be divided equally between the parties. No distribution of assets and liabilities was made at this time, however.
Dr. Crais then appealed from this judgment, arguing in part that the trial court erred in valuing the assets of the community, specifically the medical practice of Dr. Crais. This Court found no error of the trial court in valuing the community, and affirmed the judgment of the trial court. Crais v. Crais, 94-2038 (La.App. 4 Cir. 9/28/95), 660 So.2d 582, writ denied, 95-2583 (La.12/15/95), 664 So.2d 445.
While this appeal was pending, on July 28, 1994, Dr. Crais filed a Voluntary Petition for Chapter 7 Bankruptcy in the Eastern District of Louisiana, Case No. 9412517. Bonnie Crais was not listed as a creditor in these proceedings, nor was the partition judgment listed as a debt owed by Dr. Crais. By judgment dated November 3, 1994, Dr. Crais was released from all dischargeable debts as listed in the schedule attached to his petition.
In 1995, Mrs. Crais filed into these proceedings a Motion to Allocate and/or Distribute Assets and Liabilities. The matter was set for hearing on June 18, 1996, and on June 21, 1996 the trial court issued a judgment ordering the parties to submit legal memoranda on the issues presented.
Mrs. Crais argued in this motion that as the judgment partitioning the community property had not been included in the list of debts of Dr. Crais's bankruptcy proceedings, this obligation had not been discharged. Mrs. Crais sought an allocation from the community of one-half of the value of the community assets as assessed by the trial court in May of 1994, in addition to the increases in value of the profitsharing plan which had occurred since the judgment was rendered. Mrs. Crais acknowledged that she had received assets from the community which totalled $13,697.00. Mrs. Crais alleged that the value of her half of the community considering the increases in the profit-sharing account and the assets she had previously received was $137,044.00.
Further, Mrs. Crais contended that as a result of the bankruptcy proceedings and discharge of Dr. Crais, she had become responsible for community debts in the amount of $186.901.00. Specifically, Mrs. Crais alleged that she was responsible for the deficiency judgment obtained by the lender on the family home, for various consumer debts, school tuition, and legal bills. Accordingly, Mrs. Crais sought an allocation from the community for the payment of these debts. Mrs. Crais alleged that the total amount of assets to which she was entitled was $323,945.00.
Mrs. Crais alleged that the only two remaining assets of the community were Dr. Crais's medical practice, which was not susceptible of distribution, and the Shearson Profit Sharing Account, which had a value of $224,785.00. Mrs. Crais requested that the entire Shearson Account be distributed to her. Mrs. Crais also sought a deficiency judgment against Dr. Crais for the remainder of the community debts owed by Mrs. Crais.
In response to this Motion, Dr. Crais filed an opposition arguing that the debts of the community had been discharged in the bankruptcy proceedings, and they could not be allocated to him. Dr. Crais further argued that because Mrs. Crais had actual knowledge of the bankruptcy proceedings but failed to file an objection to the list of creditors, the debt allegedly owed by him to his former wife had been discharged.
On December 30, 1996, the trial court ordered a hearing to further clarify the issues raised in the motion filed by Mrs. Crais. In addition, the trial court also appointed a special master to make recommendations to the trial court on this matter.
*788 This matter was submitted to the trial court on memoranda of the parties. On February 2, 1998, the trial court rendered the following judgment:
IT IS ORDERED, ADJUDGED AND DECREED that Bonnie Mary Burke Crais is recognized as the owner of her community interest in the Shearson Leamon Retirement Account, together with accumulated increases in value and further she is also hereby is [sic] awarded the entirety of the plaintiffs (Dr. Thomas Crais, Jr.'s) interest in the Shearson Leamon Retirement Account including any increases in value on the account since the original property partition;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Bonnie Mary Burke Crais and against Thomas F. Crais, Jr., in the amount of One hundred six thousand eight hundred forty-three dollars and fifteen cents, ($106,843.15), which is an amount equal to an undivided one-half (½) interest in and to the medical practice of her former spouse, in addition to judicial interest from May 14, 1994 until paid;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Thomas F. Crais, Jr. be and is hereby awarded all of the right, title and interest in and to the Thomas F. Crais, Jr. medical practice including any and all receivables, and tangible property used in the medical practice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Thomas F. Crais, Jr., be and is hereby awarded all assets allocated to him by agreement of the parties or prior judgment of this Court.
Dr. Crais now appeals from this judgment on the basis of several assignments of error. For the reasons stated herein, we affirm the trial court's judgment.

Discussion
Appellant first contends that the trial court did not have subject matter jurisdiction over this matter based on the filing of the bankruptcy proceedings by Dr. Crais. In support of this position, Dr. Crais cites to the case of In re Hendrick, 45 B.R. 976, 983-984 (Bkrtcy.M.D.La. 1985), which holds that absent a partition, the entire property of the former community estate becomes the property of the bankruptcy estate.
However, in the present case, the judgment of partition of the community property was rendered prior to the filing of the bankruptcy petition. The bankruptcy court was never presented with the task of partitioning the community as the state court had previously rendered a judgment of partition. Thus, the Hendrick case is distinguishable on this basis.
Further, the only community asset which was allocated by the trial court to Mrs. Crais in this case was not part of the exclusive control of the bankruptcy court. The bankruptcy petition which is found in the record as an exhibit in this case indicates that the Shearson Leamon retirement account was listed as an exemption from the bankruptcy laws pursuant to La. R.S. 13:3881.
In addition, Mrs. Crais' claims for reimbursement of payment of community debts arose after the filing of the petition for bankruptcy, and is therefore not subject to the exclusive control of the bankruptcy court. Under these circumstances, we find no merit in appellant's argument that the trial court did not have subject matter jurisdiction over the allocation of the community property assets.
Appellant next contends that the trial court erred in appointing a special master in this case. Further, appellant argues that he was denied due process because he was denied an opportunity of a hearing during which he could cross-examine the expert appointed by the trial court.
*789 Appellant first contends that the trial court had no authority on December 30, 1996 to appoint a special master because the legislation providing for such, La. R.S. 13:4165, was not enacted until 1997. However, prior to the enactment of this legislation, Louisiana courts have enlisted special masters to assist them in resolution of complicated community property matters. See, Blanchard v. Blanchard, 96-1031 (La.App.5 Cir.5/28/97), 697 So.2d 275, writ granted, 97-2305 (La.12/19/97), 706 So.2d 439. Further, La. R.S. 9:2801(3) allows the trial court to appoint experts to assist the court in the settlement of the community and partition of the community property. Under the circumstances presented in this case, we find that the trial court's action in appointing a special master to assist the court in the resolution of the community property issues in this case was appropriate.
Appellant also contends that his rights of due process were violated by the trial court's failure to hold a contradictory hearing in this matter. Appellant argues that due process required that he be allowed to cross-examine the special master on his recommendations. Appellant contends that the special master was an expert appointed by the court, and La. C.E. art. 706 provides that a party may take the deposition of the expert or call the expert to testify.
The record in this case indicates that Mrs. Crais's Motion to Allocate and/or Distribute Assets and Liabilities was set for hearing on June 18, 1996, at which time both parties and their counsel were present. Following this hearing, the trial court issued a judgment on June 21, 1996 ordering the parties to submit legal memoranda on the issues raised in the motion. The court further stated that it would then take the matter under advisement and render a judgment based on the legal memoranda submitted, unless the court determined an additional status conference was needed. Appellant did not object to this process, but submitted a memorandum on the issues presented to the trial court. He did not request a contradictory hearing. Further, appellant did not object to the trial court's order of December 30, 1996 which appointed the special master.
We fail to find that due process was violated by the failure of the trial court to hold a hearing in this matter. Dr. Crais was given an opportunity to be heard through legal memoranda, and he did not object to this process. By his failure to object to or seek supervisory review of the trial court's order, Dr. Crais waived his right to seek a contradictory hearing. Further, the record shows that pursuant to the trial court's order, Mrs. Crais submitted a memorandum in support of her motion fully outlining her claim to her share of the community property and reimbursement for community debts. Although Dr. Crais opposed the motion, he did not contest Mrs. Crais's proposed allocation of assets and liabilities, and in fact stated he was in agreement with such allocation. Dr. Crais only argued that the debts sought to be allocated to him by his former spouse had been discharged in bankruptcy.
The trial court rejected Dr. Crais's argument that the partition judgment and the claim to reimbursement had been discharged in bankruptcy on the basis that the partition did not become final until after the discharge was granted, and the claim for reimbursement arose after the discharge by the bankruptcy court. We find no error in this determination.
The record indicates that the trial court appointed a special master to assist in the resolution of this matter. The court's reasons for judgment indicate that the special master rendered its findings to the trial court. There is no indication that the court was presented with any additional evidence that was not subject to review by the parties in this case or that the trial court relied solely on the report of the special master in rendering her decision. The trial court made the final decision and *790 rendered judgment, and the special master was only a judicial assistant in this case. Neither the Code of Evidence nor the statutory rules governing partition of community property requires that the trial court hold a hearing under these circumstances. Further, we find that remanding this case for a hearing on the findings of the special master would serve no purpose other than further delay of the resolution of the issues in this case. We therefore find the trial court's actions in this case to be proper, and we find appellant's arguments to be without merit.
Appellant next contends that the trial court erred in deeming the judgment of May 16, 1994 to be a final judgment. Appellant contends that although the judgment was affirmed by this Court on appeal, this Court never held that the actual value assigned to the former community was final for all time. We disagree with this argument.
Dr. Crais appealed from the judgment of May 16, 1994. There was no issue raised by the parties that the judgment was not appealable, and this Court did not consider this issue. The trial court conducted a full hearing in April of 1994 concerning the valuation of the community which resulted in the judgment of May 16, 1994. The trial court assigned extensive reasons for judgment. For the reasons stated therein, the trial court set the value of the property at the time of the termination of the community, rather than at the time of the partition. This Court affirmed that judgment and found that the valuation of the community property by the trial judge was proper. We find that the value of the community, which was fully litigated at the trial level and affirmed by this Court on appeal, is a final judgment. We will not revisit the issue of the valuation of the community based on changes in the market since that time.
Finally, appellant argues that the automatic stay order issued on July 28, 1994 by the bankruptcy court prohibits the trial court from using any debts or claims existing at the time of the filing of the bankruptcy petition as a basis for allocating and/or distributing assets or liabilities.
On July 28, 1994, Dr. Crais filed a voluntary petition for relief in bankruptcy under the provisions of Chapter 7 of the U.S. Bankruptcy Code. By Order of the Bankruptcy Court, Dr. Crais was discharged of all dischargeable debts, and all judgments which determined personal liability of the debtor were deemed null and void with respect to all debts dischargeable under 11 U.S.C.
The judgment of May 16, 1994 set the value of the community property and stated that the value was to be divided equally between the parties. According to this judgment, Bonnie Crais was owed net assets in the amount of $118,996.00 from the community. The bankruptcy petition and attached schedules filed by Dr. Crais indicate that this partition judgment was not included in the proceedings, nor was Bonnie Crais listed as a creditor. Accordingly, the partition judgment was not discharged in bankruptcy.
Further, with regard to Mrs. Crais's claim for reimbursement of community debts, this claim did not arise until after the discharge of Dr. Crais by the bankruptcy court. Therefore, this claim was not discharged by the bankruptcy court. We fail to find that the trial court violated the stay order issued by the United States Bankruptcy Court.
La. R.S. 9:2801 allows the trial court broad discretion in resolving community property disputes. We have thoroughly reviewed the record in this case, and we find no abuse of the trial court's discretion.

Conclusion
Accordingly, for the reasons stated herein, the judgment of the trial court of February 2, 1998 is affirmed. Appellant is to bear all costs of this appeal.
AFFIRMED.
PLOTKIN, J., DISSENTS IN PART WITH WRITTEN REASONS.
*791 PLOTKIN, Judge, dissenting in part:
I respectfully dissent from the majority decision to the extent it summarily dismisses Mr. Crais' arguments concerning the issues related to the special master's involvement in this case. Although I agree with the majority's conclusion that the trial court did not err in appointing an expert witness in this case, I disagree with its conclusion that the remainder of the trial court's decisions regarding the special master's involvement in the case was appropriate. I believe that the effect of the trial court's actions was to deny Mr. Crais due process and an opportunity to be heard concerning ultimate issues in the case.
Mr. Crais claims that the special master's involvement in this case went far beyond making recommendations which were considered by the trial court in making his decision, along with other evidence, which would have been appropriate. Mr. Crais claims that the court-appointed special master effectively decided the ultimate issues in the case because the trial court simply adopted his recommendations without providing the parties notice and a hearing, or even an opportunity to object to the special master's recommendations. In fact, according to Mr. Crais, the parties were not even informed that the special master had submitted a report. The trial court simply entered judgment after receiving the report. Importantly, Ms. Crais does not dispute these representations of the procedural history of this case, but simply claims that Mr. Crais agreed to that procedure. However, because the trial judge apparently rendered judgment without informing the parties of her intention to do so, Mr. Crais was even denied the opportunity to object to the procedure on the record.
At the time of the decision in the instant case, LSA-R.S. 9:2801(3) provided as follows:
The court may appoint such experts pursuant to Articles 192 and 373 of the Louisiana Code of Civil Procedure as it deems proper to assist the court in the settlement of the community and partition of community property, including the classification of assets as community or separate, the appraisal of community assets, the settlement of the claims of the parties, and the allocations of assets and liabilities to the parties.
The purpose of the above statute is to allow magistrates and commissioners to conduct and resolve pre-trial matters, such as discovery disputes and motions for sanctions. Although the statutes allow special court-appointed experts, like the special master in this case, to advise the court concerning such matters as classification of assets, appraisal of assets, settlement of claims, and allocations of assets and liabilities, it does not allow a court to appoint an expert to decide the case. The legislature never intended, and administrative due process does not permit, a trial judge to refer the dispute for final disposition to a third party, without providing the parties notice and an opportunity for a hearing.
In addition to the specific provisions of LSA-R.S. 9:2801(3), relative to experts in community property matters, the appointment of experts by the court in civil cases, according to La. C.C.P. art. 192, is also controlled by the provisions of La. C.E. art. 706(A), which provides, as follows:
In a civil case, the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appoint shall *792 advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.
(Emphasis added.) This article makes it clear that the trial court's actions in the instant case was improper; the article obviously contemplates involvement of the parties following the appointment of any court-appointed expert in a civil case. The trial court had no authority to simply adopt the special master's findings, as he did in this case, without affording the parties an opportunity to traverse the special master's report. This is especially true since the trial court specifically stated, prior to the appointment of the special master, that a hearing was necessary to decide the issues arising out of the community property dispute.
The majority seeks to avoid the extra burden on an already-overloaded judicial system which would result if this case is remanded by noting that the record contains no indication that the court was presented with any additional evidence that was not subject to review by the parties or that the trial court relied solely on the report of the special master in rendering her decision. I respectfully disagree with both of those conclusions. The trial court's reasons for judgment state, in pertinent part, as follows:
The special master appointed by order of the Court and stipulation of Counsel for the respective parties has reviewed the pleadings including the memoranda submitted by Counsel, and has made findings and recommendations to the Court as directed.
The Court having considered said findings, provides the following reasons for judgment:
(Emphasis added.)
The trial court clearly considered nothing except the special master's report in rendering her decision, which had never been reviewed by the parties. Thus, the record shows clearly that the trial judge considered "additional evidence not subject to review by the parties in this case." Moreover, the trial court judgment refers only to the recommendations of the special master, not to any evidence or argument of parties. The trial judge apparently followed all of the special master's recommendations, on evidentiary and fact question, as well as legal issues. The legal system guarantees the litigants the right to a full hearing at the trial court level where they can present objections and other evidence. Mr. Crais was virtually ambushed by the trial court's tactics in this case. In fact, the trial judge herself notes that it was the special master who received the memoranda from the parties; the trial judge's reasons indicate that she never even looked at the memoranda, much less considered other evidence. The majority's representations to the contrary are clearly contradicted by the reasons for judgment.
The question to be considered by this court is not whether the result would have been different if the trial court had properly allowed the parties to traverse the special master's report, as the majority intimates. The real issue is the denial of procedural due process, a error which cannot be overlooked simply because the record does not reveal the problems. Moreover, the majority's statement that Mr. Crais waived his objections to the procedure because he failed to object at the trial court level is misplaced. The record indicates that the trial judge stated, at the time she appointed the special master, that a hearing would be necessary to resolve the issues. Mr. Crais was entitled to rely on that statement, and thus had no reason to object to the trial court procedure until the damage had been done. Because the trial judge apparently rendered judgment without informing the parties of her intention to do so, Mr. Crais was even denied the opportunity to object to the procedure on the record.
Moreover, Blanchard v. Blanchard, 96-1031 (La.App. 5 Cir. 5/28/97), 697 So.2d 275, writs granted, 97-2305 (La.12/19/07), *793 706 So.2d 439, does not provide authority for the trial court's actions in this case, although it does indicate that special masters were used in Louisiana community property cases even before the adoption of the current statutes governing that procedure. Moreover, the Louisiana Supreme Court has granted writs on Blanchard, making it inappropriate for use as authority to support the trial court's decision. Further, the Blanchard case does not address the exact issue raised here. The opinion simply notes that "the trial court adopted the recommendation of the special master appointed to review the case and divided the assets according to defendant's request." Nothing in the opinion indicates what actions were taken by the trial court prior to the adoption of the special master's recommendations. Moreover, the parties did not contest that aspect of the judgment.
In the instant case, the trial court ordered a special master to decide issues inherently within her sole province, given the fact that the special master's recommendations were apparently adopted pro forma by the trial court. The record is unclear concerning the evidence considered. The defect in this case is the fact that the trial judge improperly submitted the case to a third party, non-judicial officer for adjudication, despite the fact that litigants are entitled to have their case considered by a duly-elected official.
Under the circumstances presented by this case, I would reverse the trial court judgment and remand for hearing on the special master's recommendations and for a reasoned judgment by the trial court after the parties have had an opportunity to review and object to the report. This important issue, which was summarily dismissed by the majority, should be considered by the Louisiana Supreme Court.