OPINION OF THE COURT
Richard A. Goldberg, J.
This action for divorce raises a novel question of law concerning equitable distribution. To what extent, if at all, may a Trial Judge restrict a pensioner’s choice of options under his pension plan in order to protect the nonemployee spouse’s interest in the pension following equitable distribution?
Plaintiff and defendant are 59 and 62 years of age, respectively, and were married on November 23, 1947, at Roseland, Virginia. At the time the parties married in 1947, neither had any significant assets or income. Defendant is now a Deputy Chief of the New York City Fire Department, with an actual annual income in excess of $55,000 per annum, inclusive of base pay, holiday pay and shift differential. Mrs. McDermott has a brief history of employment in essentially unskilled trades, but has been a housewife and has relied on her husband’s income for almost all of their marriage.
The court finds that plaintiff is entitled to a judgment of divorce against defendant by reason of defendant’s aban *356 donment of the plaintiff. Specifically, defendant left the marital residence on May 15, 1968, and has not resided there since.
This action was brought subsequent to enactment of the Equitable Distribution Law, and is to be governed by its terms. Section 236 (part B, subd 1, par c) of the Domestic Relations Law defines “marital property” as “all property acquired by either or both spouses during the marriage and before * * * commencement of a matrimonial action, regardless of the form in which title is held”.
The court finds the marital property of the parties to be as follows, and has considered the 10 factors enumerated in section 236 (part B, subd 5, par d) of the Domestic Relations Law, in equitably distributing such property:
A. The marital home located at 333 Mill Road, Staten Island, presently occupied by plaintiff, which has a fair market value of $59,500, plus furnishings of $3,000. This shall become the sole property of plaintiff.
B. The home at 1324 Bay Street, Staten Island, presently occupied by defendant, which has a fair market value of $27,500, plus furnishings of $600. This shall become the sole property of defendant.
C. Various joint bank accounts totaling $5,564.86. Each party shall have a one-half interest in these accounts, and defendant shall pay one half thereof to plaintiff within 30 days of entry of judgment.
D. Stock brokerage account in defendant’s name, worth $33,565 when this action was commenced. This shall remain defendant’s sole property, to offset the difference in value of the two real properties previously distributed.
E. Three automobiles worth $2,600 aggregate; these automobiles shall remain the property of the defendant.
F. The defendant’s annuity fund with the Uniformed Fire Officers’ Association, which had a value on the date this action was commenced, of $9,461.14. The court finds that plaintiff is entitled to one half thereof, or $4,730.57, and directs that the fund pay the same directly to the plaintiff upon the retirement of the defendant. A copy of the order to be entered herein directing such payment shall be served upon the authorized representative of the fund.
*357 G. The defendant’s vested and matured pension with the New York City Fire Department. Its value as of commencement of this action cannot be precisely calculated. However, the Fire Department’s Pension Supervisor, Mr. Paul Porcello, testified that as of January 1, 1982, the closest available date to the commencement of the action for which figures are obtainable, the defendant’s pension reserve fund contained $317,268.59, making this by far the most significant marital asset. Mr. McDermott joined the Fire Department in 1948, shortly after his marriage to the plaintiff, and is now a Deputy Chief. Although he is eligible to retire at any time, he has elected not to do so. This distribution of this marital asset will be discussed in detail below.
The brokerage account and bank accounts comprise the liquid marital assets. Defendant’s pension is liquid only to the extent that it has matured, i.e., if he were to retire immediately, he would be entitled to receive periodic benefits.
Based upon the income, expenses, needs and life-styles of the parties, plaintiff is awarded maintenance of $225 per week, commencing the first Friday after entry of judgment. Said payments shall terminate on the death of either party, the remarriage of the plaintiff, or the retirement of the defendant, so as to enable him to collect his pension benefits.
The equitable distribution of the marital assets and the maintenance awarded herein are intended to provide Mrs. McDermott with an income sufficient to maintain her home and meet daily living expenses, without an award of maintenance after the retirement of defendant. It will provide plaintiff with financial security, without unduly burdening defendant. In view of the ages and backgrounds of the respective parties, the court finds that plaintiff has little or no earning capacity now or in the future, and defendant is not likely to have any after his retirement from the Fire Department.
The court notes that an equal, or substantially equal, division of marital property will result in no tax liability to either party. (IRS Rev Rul 81-29 IRB 1981-50; IRS Rev Rul *358 76-83,1976-1 CB 213; Rev Rul 56-437,1956-2 CB 507; Rev Rul 74-347; cf. Lentz v Lentz, 117 Misc 2d 78.)
The remainder of this opinion will predominantly consider distribution of defendant’s pension.
It is now well settled in this State, that pension benefits, whether vested or contingent, whether matured or not, are property subject to equitable distribution. (Perri v Perri, 115 Misc 2d 478; Majauskas v Majauskas, 110 Mise 2d 323; Damiano v Damiano, 94 AD2d 132.) In the present case, defendant’s pension has vested, i.e., his rights cannot be lost by discharge or retirement, and has matured, i.e., he has a right to receive immediate benefits if and when he retires.
Where possible, courts will generally award the full amount of the pension to the employee spouse, ordering a distributive award to the nonemployee spouse to account for its value. In the present case, given the size of the pension and the value of the parties’ liquid assets, such a distributive award to plaintiff is simply not possible. Nonetheless, the court does not feel that division of the pension benefits between the parties will be unduly cumbersome to effectuate.
The Fire Department’s Pension Supervisor, Mr. Porcello, testified that Mr. McDermott’s pension reserve contained $317,268.59 on January 1, 1982, and that if he retired on that date, he would have been entitled to receive a maximum of $35,193.41 per annum for the rest of his life. This latter figure is called the “maximum allowance”. Upon the retiree’s death, the benefit would end and a designated beneficiary would receive $4,000 in life insurance.
Alternatively, the Fire Department offers four options to its members (all figures based on defendant’s retirement on January 1, 1982, the closest date to the commencement of the action for which figures could be calculated).
option i would give the pensioner a reduced yearly allowance of, in this case, $26,668.05. Upon his death, a designated beneficiary would receive, in lump sum, the remaining balance, if any, of the reserve fund. (The reserve fund is calculated to pay out the maximum allowance for the actuarial life expectancy of the pensioner. Actuarial *359 figures are provided by the Chief Actuary of the City of New York.)
option ii, in this case, pays out a reduced annual allowance of $23,483.86, and upon the pensioner’s death, the same sum would be payable on a yearly basis to his designated beneficiary, for life.
option in pays out a slightly higher allowance than option ii ($25,887.72), but upon the pensioner’s death, the designated beneficiary would receive half the benefit ($12,943.86 per annum) for life.
option iv permits the pensioner to convert all or part of the maximum allowance into life insurance, at a cost of approximately $64 per annum for each unit of $1,000 of insurance. For each unit of insurance purchased, $64 is deducted from the maximum allowance, and the pensioner would receive the rest. He could use the entire maximum allowance to buy insurance, and receive nothing. The insurance would be payable upon the pensioner’s death, to his designated beneficiary, if living, or to the pensioner’s estate.
Distributing pension benefits is not difficult where the value of the pension is not extremely large (Majauskas v Majauskas, supra) or where the pensioner has already retired and is receiving his benefits (Perri v Perri, supra). The present case, in which the pension has sizable value, and in which the defendant has chosen to continue working despite maturation of his pension, and in which pensioner has several different benefit options to choose from, presents greater difficulty. The court’s attention is not directed to any cases in this jurisdiction which address the power of a Trial Judge to restrict the employee spouse’s choice of benefit options in order to protect the nonemployee spouse’s interest. Nor have our cases established a rule to determine when such benefits should be distributed to the nonemployee spouse when, as here, the pensioner continues to work.
The courts of California, a community property State, have dealt extensively with these questions and have determined that a Trial Judge may, if necessary, to preserve the nonemployee spouse’s interest, order the trustees of a pension fund not to honor an employee’s choice of *360 certain benefit options or his designation of any beneficiary which would effectively defeat the nonemployee spouse’s interest. (Matter of Gillmore, 29 Cal 3d 418; Matter of Lionberger, 97 Cal App 3d 56; Matter of Brown, 15 Cal 3d 838.) Furthermore, in Matter of Luciano (104 Cal App 3d 956), a California appellate court held that “The employee spouse cannot by election defeat the non-employee spouse’s interest in the community property by relying on a condition solely within the employee spouse’s control” (p 960).
In the California cases, the nonemployee spouse may choose to wait until the pensioner retires in order to partake of the increase in value of the pension between the time of divorce and the time of retirement. In the present case, because part B of section 236 of the Domestic Relations Law “closes the books” on the value of marital property as of the date of commencement of the action, plaintiff would not be entitled to share in the increased value of the pension. Here, plaintiff has been granted a half interest in the pension as it was valued on January 1,1982. A buy out of plaintiff’s share of the pension is impracticable here due to insufficiency of liquid assets.
This court holds that it has the power to limit the employee spouse’s choice of pension options or designation of beneficiary where necessary, to preserve the nonemployee spouse’s interest in the fund and further, to order the trustees of a pension fund not to honor an employee’s choice of benefit options or designation of beneficiary which would effectively defeat the nonemployee spouse’s interest as determined by the court.
Clearly, Mr. McDermott may not choose the “maximum allowance”. Under this pension option, Mrs. McDermott would be entitled only to a small amount of insurance ($4,000) should Mr. McDermott die at any time after retiring. Her future financial security should hot be subject to such an “all or nothing” gamble, particularly where all the factors are beyond her control.
Regarding Mr. McDermott’s alternative benefit options, it is clear that he cannot be permitted to choose option i. If he were to live beyond his actuarial life expectancy, his reserve fund would be exhausted and Mrs. McDermott would receive nothing after his death.
*361 Using the figures set forth above as the value to which she would be entitled, options ii and iii would provide Mrs. McDermott with a guaranteed income both before and after Mr. McDermott’s death, provided, of course, she shares in the above benefits while he is alive and further, that she is designated beneficiary after his death, at least to the extent of the values as of January 1, 1982.
By way of example, if option ii is chosen by the defendant, then upon defendant’s retirement, his obligation to pay maintenance will cease and in its place, plaintiff shall be entitled to an annual allowance of $11,741.93 (one half of $23,483.86) for as long as both she and defendant live. In the event of defendant’s demise, plaintiff is to be designated sole beneficiary to the extent of no less than $11,741.93 per annum, so that if defendant predeceases her, she is to receive at least that amount for the remainder of her life.
If option iii is chosen by the defendant, then upon defendant’s retirement, his obligation to pay maintenance will cease, and in its place plaintiff shall be entitled to an annual allowance of $12,943.86 (one half of $25,887.72) for so long as both she and defendant live. In the event of defendant’s demise, plaintiff is to be designated sole beneficiary to the extent of no less than $12,943.86 per annum, so that if defendant predeceases her, she is to receive at least that amount for the remainder of her life. By directing the pension fund to make the above payments directly to Mrs. McDermott, this court is of the opinion that each party will therefore be liable for income taxes only on the amounts actually received, to the extent that such payments are in fact taxable.
A choice of either option by Mr. McDermott will not be detrimental to Mrs. McDermott.
option iv gives Mr. McDermott discretion to eradicate his entire yearly allowance, which clearly would be unacceptable. He may, therefore, choose option iv only if (a) Mrs. McDermott is designated as the beneficiary of the insurance proceeds, and (b) he limits the amount of insurance purchased, so that Mrs. McDermott receives an annual sum which is no less than that which she would *362 receive under option iii, using the values established as of January 1, 1982, to wit, $12,943.86.
Therefore, Mr. McDermott is hereby ordered to select pension options ii or iii, or option iv under the conditions set forth above.
Furthermore, the Trustees of the New York City Fire Department Pension Plan are hereby ordered not to honor any election or designation of beneficiary by Mr. McDermott, other than one of the plans set forth herein. A copy of this judgment shall be served upon the Administrators of the Fire Department Pension Plan.
Should Mr. McDermott die prior to his retirement, his pension plan contains a provision called a “death gamble”. Under this provision, his designated beneficiary would receive, in lump sum, the total value of the reserve fund. Because Mrs. McDermott is deemed to have a one-half interest in the pension valued as of January 1, 1982, it is clear that she is not entitled to receive the entire reserve fund if Mr. McDermott should die before his retirement. Therefore, Mr. McDermott shall for the purposes of the “death gamble” only, designate Mrs. McDermott as beneficiary of the “death gamble” to the extent of at least $158,634.29 and may designate a different beneficiary of his choosing for the remainder of the “death gamble”. The Fire Department Pension System Administrators are hereby directed to pay the value of the reserve fund to that beneficiary, less the sum of $158,634.29, which is to be paid to Mrs. McDermott, if Mr. McDermott dies before retirement. They are also directed to advise Mrs. McDermott of the option selected by Mr. McDermott, in writing, within 30 days of his election of option.
The court notes that Mrs. McDermott’s interest in her husband’s pension benefits, though vested and matured, is not devisable property. Upon Mrs. McDermott’s death, her interest in the pension shall terminate.
The court also notes that alternative methods of allocating pension rights between spouses exist, e.g., prorating period of entitlement to total benefits received. (See Majauskas v Majauskas, 110 Misc 2d 323, supra.) However, the court has chosen the above method as being less complicated, easier for the parties to understand, *363 particularly with regard to exercising options or planning for the future, and more likely to eliminate future tax problems, although the court recognizes that the benefits received by the parties may differ slightly under this approach.
This court awards plaintiff’s counsel the sum of $7,500, as and for additional counsel fees, inclusive of disbursements.