731 So.2d 175 (1999)
Charlene Arcement BLANCHARD
v.
Wayne P. BLANCHARD.
No. 97-C-2305.
Supreme Court of Louisiana.
January 20, 1999.
*176 Frank Louis DeSalvo, New Orleans, for Applicant.
Ernest Eugene Barrow, II, Gretna, for Respondent.
Calogero, C.J.[*]
We determine in this case the manner in which a marital community should be partitioned, where the community consists only of two major marital assets, a pension, not yet fully mature, and the family home.
The defendant, Wayne Blanchard, argued in the court of appeal and in this Court that the district court judge did not abuse his discretion in awarding him the family home and Ms. Blanchard the pension. Ms. Blanchard, on the other hand, argues that such an allocation is inequitable under LSA-9:2801 because of the different "natures" of the assets, her pension being in large part a future hope and the family home being a presently marketable, tangible piece of immovable property. She argues that each asset should be equally divided between the parties if equity is to prevail.
Resolution of this issue necessarily turns on whether it is proper in this case to divide the pension using the "present cash value" method, recognized by this Court in Hare v. Hodgins, 586 So.2d 118 (La.1991), or to defer defendant's benefit distribution until Ms. Blanchard retires under the "fixed percentage" method recognized in Sims v. Sims, 358 So.2d 919 (La.1978). For the following reasons, we affirm the court of appeal decision, and hold that division of the two assets, one to each party, was improper under the circumstances of this case.

FACTS
Charlene Arcement Blanchard and Wayne P. Blanchard were divorced on March 3, 1993. A hearing was held on July 3, 1996 to partition their community property. At that hearing, allocation of the two major assets, the family home and Ms. Blanchard's pension account with the Teacher's Retirement System was the major issue in dispute.[1] Plaintiff requested that each of these two assets be divided equally between the parties, with a Qualified Domestic Relations Order[2] transferring *177 one-half of the pension account to the defendant and one-half of the house to each spouse, to be followed by either a buy-out or a partition by licitation of the home. Defendant requested that the assets be divided by allocating full ownership of the pension to Ms. Blanchard and ownership of the home to him.
The parties stipulated to the values of these two community assets. The home was valued at $44,000. It had been the childhood home of the defendant but was purchased by the community during the marriage by act of sale from Mr. Blanchard's mother. The community assumed the mortgage payments. The mortgage was paid off during the marriage, and the home is currently unencumbered.
The plaintiff's pension with the Teacher's Retirement System is a defined benefit plan which is vested, but not yet fully mature.[3] The community portion of the pension was assessed by defendant's expert at 87%, the present value of that community interest being $87,585.04.[4] That figure was based on plaintiff's initial eligibility for retirement, eight months prior, on November 6, 1995. On that date, she had been employed twenty years with the Jefferson Parish School System and could therefore have retired at that time if she so chose.
However, if plaintiff accumulates thirty years in the school system, her monthly retirement benefits will be substantially higher.[5] Plaintiff indicated that she could not afford to live on the benefits she would receive if she retired after only twenty years of service, and she therefore elected not to retire at that time, opting instead to continue employment in an effort to earn the maximum benefit amount available under the plan. Consequently, the community's interest in the pension was given an alternate value based on a potential retirement date of November 7, 2004, the date on which she would have thirty years of service. On that future date, with all facts and assumptions remaining the same, defendant's expert concluded that the community portion of the pension would be 60%, with a net present value of $50,267.[6] *178 This latter figure is approximately $37,000 less than the value of the community portion of the pension had Ms. Blanchard retired when she was first eligible. We note, however, that the parties have not contested the valuation of the pension plan in this regard and have stipulated to its value.[7] The record does not provide us with sufficient information to determine whether the agreed upon value is in fact correct considering the myriad factors properly to be used in such a calculation. The parties' stipulation to the pension's present value obviates the need for us to address this issue.
The trial court appointed a special master to review the case and to submit a recommendation. See LSA-RS 9:2801(3) (West Supp.1999) (allowing the court to appoint an expert to assist in the allocation of assets to the parties). Because the present cash value of the community interest in the pension with a November 2004 commencement date, $50, 267, was approximately the same value as the family home, $44,000, the special master concluded that it would not be inequitable to use the present cash value methodology recognized by this Court in Hare v. Hodgins, 586 So.2d 118 (La.1991) and allocate to Ms. Blanchard the entire pension and to Mr. Blanchard the home and an equalizing cash payment. The trial court adopted the recommendation of the special master and, using the value of the pension assessed should the plaintiff retire in 2004, allocated the home to the defendant, the pension to the plaintiff, and directed the plaintiff to pay the defendant $3,079.50 as an equalizing payment.[8]See LSA-RS 9:2801(4)(c) (West Supp.1999)(court may order an equalizing sum of money in the event the allocation of assets results in an unequal net distribution).
The court of appeal reversed the trial court judgment insofar as is it awarded the pension to plaintiff and the home and equalizing payment to defendant. Blanchard v. Blanchard, 96-1031 p. 13 (La.App. 5 Cir. 5/28/97), 697 So.2d 275, 280. The court of appeal specifically found that the trial court erred in light of LSA-RS 9:2801, which instructs the trial court to consider "the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant" in determining its allocation.[9]Id. at p. 10, 697 *179 So.2d at 279; see LSA-RS 9:2801(4)(c). The court of appeal further held that the application of the present cash value methodology set forth in Hare, supra, was inappropriate in this case because "too many of the contingencies to which the employee spouse's pension benefits are subject, remain" such that the pension's value at fruition was "highly speculative at best." Id. at 10-11, 697 So.2d at 279. Consequently, it concluded that, considering the speculative status of the plaintiffs pension, the difference in the nature of the two assets, and the lack of adequate balancing community assets, the Blanchard case was not an appropriate one for use of the present cash value methodology to apportion a spouse's pension rights. Id. at 10, 697 So.2d at 279. We granted certiorari to determine whether the decision of the court of appeal was correct. Blanchard v. Blanchard, 97-2305 (La.12/19/97), 706 So.2d 439. For the following reasons, we find that it was.

LEGAL ANALYSIS
At the outset, we note that neither party has complained of the valuation of the pension. Therefore, we will assume, without deciding, that plaintiffs pension can indeed be accurately valued for the purposes of determining whether the present cash value method should be employed in the disposition of the pension at issue. As will be discussed further, the susceptibility of a pension to accurate valuation is not the only consideration in determining whether immediate disposition of the pension using the present cash value method is appropriate. Consequently, herein we refer to the terms "fixed percentage" and "present cash value" in the context of the disposition, rather than valuation, of the community interest in the pension.
This Court has recognized two methods of apportioning pension rights. In Sims v. Sims, 358 So.2d 919 (La.1978), we held that the proper method of apportioning the particular unmatured defined benefit plan at issue was to apply the "reserved jurisdiction" or "fixed percentage" methodology, which defers benefit distribution to the non-employee spouse until commencement of benefit distribution to the employee spouse. Use of the "fixed percentage" method does not require valuation of the pension. Disposition of pension rights under this method involves recognition of the right of the non-employee spouse to a judgment recognizing his interest in proceeds from a retirement plan, "if, as, and when" they become payable, usually in the form of a Qualified Domestic Relations Order ("QDRO"). Id. at 922; Elizabeth Alford Beskin, Retirement Equity Inaction: Division of Pension Benefits Upon Divorce in Louisiana, 48 La. L.Rev. 677, 681 (1988). Application of the fixed percentage method is typically called for when the present value of the pension cannot be accurately ascertained. Hare, supra, 586 So.2d at 125. Plaintiff, in requesting that defendant be required to share in the pension rights "if, as, and when" she does by virtue of a QDRO, urges the application of Sims to allocate the pension at issue.
Subsequent to our holding in Sims, however, we recognized in Hare v. Hodgins, supra, that the fixed percentage method of distribution was not the exclusive method by which unmatured pension rights could be allocated upon divorce. Hare, 586 So.2d at 126 (acknowledging that, to the extent Sims could be interpreted to mean that pension rights could not be valued *180 prior to maturity, such a conclusion was error). In Hare, we commented on the interplay between LSA-RS 9:2801 and pension jurisprudence, stating that LSA-RS 9:2801, enacted after our decision in Sims, affords the trial court much flexibility and implies that the "goals of equality and equity require that no one method should be used to the exclusion of other apportionment techniques." 586 So.2d at 127.
Consequently, in Hare, we cited with approval the use in certain cases of the "present cash value" methodology, in which the court calculates the present cash value of the community assets, including pension rights, and awards to the non-employee spouse his rightful share in a lump sum or in the form of equivalent property. Id. at 124-25. Such a disposition of the pension rights effects an immediate transfer to the non-employee spouse his equivalent share of the pension. In an effort to aid trial courts in determining which of these two methods would result in the more equitable distribution of the pension rights, Hare cited with approval the decisions of courts in other jurisdictions which prefer application of the present cash value method if the pension rights "can be valued accurately and if the marital estate includes sufficient equivalent property to satisfy the claim of the non-employee spouse without undue hardship to the employee spouse." Id. at 125 (emphasis added). The present cash value method of apportionment was undertaken by the trial court in this case and is the method which defendant urges is appropriate in light of our decision in Hare.
With these concepts in mind, we now undertake the resolution of the particular issue before us.
Defendant argues that the trial court is vested with much discretion in partitioning community property, and that it was not an abuse of discretion in the instant case to allocate the property at issue by using the present cash value method. He asserts that LSA-RS 9:2801 specifically repudiates the notion that the properties awarded must be identical in all respects. He further argues that because the monetary values assigned to the assets at issue were virtually equal, the assignment of the pension to the plaintiff and the family home to him cannot be said to be tantamount to saddling the plaintiff with an inequitable asset.
The plaintiff retorts that the decision of the trial court disregarded the mandate of LSA-RS 9:2801(4)(c) to consider the "nature" of the asset in determining its allocation. She asserts that, regardless of their values, her pension and the community home are so distinct that their natures cannot be disregarded in their allocation. The pension, she argues, is, at present, a mere hope of a future benefit. To the contrary, the family home, a presently marketable asset, can be mortgaged, leased, or sold, and is heritable.
In Hare, supra, we noted that in proceeding according to equity, we should be informed by the principles for dividing pension benefits that have evolved in other jurisdictions where "the problems of valuating and dividing community or marital pension rights in [those] fora are sufficiently analogous to our own to make the reasoning of their courts and commentators considerable and useful." Hare, 586 So.2d at 123-24. We recognize that approximately half of the community property jurisdictions have expressed a preference for application of the present value methodology to value and divide pension rights upon divorce. See Ruggles v. Ruggles, 116 N.M. 52, 860 P.2d 182 (1993); Gemma v. Gemma, 105 Nev. 458, 778 P.2d 429 (1989); Koelsch v. Koelsch, 148 Ariz. 176, 713 P.2d 1234 (1986); In re Gillmore, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981). Even in these jurisdictions, however, as well as in other non-community property jurisdictions, it is recognized that there are situations where implementation of this methodology is not practical considering the remaining assets which comprise the community. See Koelsch, supra, 713 *181 P.2d at 1241 ("If there are insufficient other community assets to offset the pension plan value, and if the employee spouse is unwilling to buy out the interest of the non-employee spouse, there is no alternative in the non-matured pension cases but to reserve jurisdiction to award the pension when it does mature."); Johnson v. Johnson, 131 Ariz. 38, 638 P.2d 705, 709 (1981) (present cash value is preferred where marital estate includes sufficient equivalent property to satisfy the claim of the non-employee spouse without undue hardship to the employee spouse); In re Hunt, 78 Ill.App.3d 653, 34 Ill.Dec. 55, 397 N.E.2d 511, 519 (1979) (where present cash value can be ascertained, but type, or lack of, other marital property makes it impractical or impossible to award sufficient offsetting marital property to the non-employee spouse, the trial court may order an appropriate percentage of the pension to be paid "if, as, and when" it becomes payable); McDermott v. McDermott, 123 Misc.2d 355, 474 N.Y.S.2d 221, 224 (N.Y.App. Div., Richmond County 1984) (parties' liquid assets were insufficient to offset full award of pension to employee spouse and distributive award to non-employee spouse); Holbrook v. Holbrook, 103 Wis.2d 327, 309 N.W.2d 343, 350 (Wis.Ct.App.1981) (deferred distribution method should only be used where the record shows that present cash value determinations are speculative "or where there are not enough assets to equitably require that benefits due in the future be split presently").
In Ruggles, supra, the New Mexico Supreme Court acknowledged that one occasion where fixed percentage must be employed relates to the parties' financial status: "If there are no other assets, or insufficient assets, or unsuitable assets, with which to satisfy (or secure) a lump sum distribution [of the non-employee spouse's pension rights] the court may be forced to award the non-employee spouse's share `as it comes in.'" 860 P.2d at 197.
Similarly, the Idaho Supreme Court, commenting on the present cash value method in Shill v. Shill, 100 Idaho 433, 599 P.2d 1004, 1010 (Idaho 1979), noted that one way to divide retirement benefits upon divorce would be to award the pension to the employee spouse and assign the non-employee spouse assets of a value equal to the present cash value of the contingent benefits, specifying that in some cases this may be accomplished by awarding one the house and one the pension. Id. at 1008. However, the court cautioned that where the "pension rights represent the largest portion of the assets owned by the community, [a]n immediate award of equivalent property to the non-employee spouse in exchange for the future contingent right to pension benefits will work a severe hardship on the employee spouse." Id.; see also Principles of the. Law of Family Dissolution: Analysis and Recommendations, The American Law Institute, § 4.08, at 174 (1997) ("[Lump sum distribution] may be inappropriate, however, when the pension constitutes a large proportion of the couple's property....").
This Blanchard situation has presented itself in other jurisdictions. In Taylor v. Taylor, 329 N.W.2d 795 (Minn.1983), the trial court awarded the wife half of the husband's pension, payable upon his retirement, and ordered that the homestead be sold. Like the plaintiff in Blanchard, the husband in Taylor was able to retire but planned to continue working for as long as he could. Id. at 797. On appeal, the wife urged that the trial court erred in not awarding her the house and her husband the pension so that an immediate division of all the community property, the pension included, could be effectuated. In upholding the trial court's decision to defer payment until the husband's retirement, the Minnesota Supreme Court found reasonable the lower court's conclusion that the wife's desired allocation would have caused the husband undue hardship under the circumstances presented. In that case, "[t]he only assets of the marriage immediately *182 available to [the husband] other than proceeds of the house [were] a few personal possessions, [and] a few pieces of furniture.... Sale of the house, on the other hand, provide[d] each of the parties with approximately $30,000 in which to start a new life." Id. at 799; see also, Oberle v. Oberle, 355 N.W.2d 210 (Minn.Ct.App. 1984) (applying the Taylor holding to a mature pension).
Similarly, in Bailey v. Bailey, 745 P.2d 830 (Utah Ct.App.1987), the husband appealed a trial court judgment awarding the wife the family home and him his unmatured pension benefits. The husband argued that the allocation was inequitable because it gave the wife the "liquid" asset, while he was given the deferred asset. He appealed, arguing that the wife should share in the same contingencies to which he was subject with regard to his pension. Id. at 830 (the husband was not yet eligible to retire). The majority reversed the trial court judgment and remanded with the instruction that, unless the trial court made specific findings as to reasons for immediate distribution, "distribution of the retirement benefits should generally be postponed until benefits are received or at least until the earner is eligible to retire... particularly where there is sparsity of other divisible assets." Id. at 832-33.
The concurring opinion expressed the belief that immediate distribution of the pension rights should have been preferred by the majority, but only if there were assets with which the "cash-out" could be appropriately effected. Id. at 834-35 (Orme, J. concurring). The concurrence concluded that use of the present cash value methodology would require consideration of whether a less onerous approach than awarding the wife the home and the husband the pension rights might be achieved. It stated, "On the surface, divesting Mr. Bailey of his only `liquid' asset of any consequencehis share of the equity in the residenceseems a fairly exacting means for leaving him with the entirety of an asset, which, as a practical matter, will do him no good until after the turn of the century. In my judgment, any shift by the trial court to deferred participation by Mrs. Bailey should be the product of concern about the lack of such assets as will fairly permit immediate or short-term cash-out of Mrs. Bailey's share of the benefits...." Id. at 835.
Turning now to the case presently before us, the particular issue for our resolution is this: Considering the nature and extent of the assets which comprise this community, is there sufficient equivalent community property to satisfy the claim of the non-employee spouse without undue hardship to the employee spouse. The Blanchard community consists of only two major assets, the family home and the pension. While Ms. Blanchard is indeed able to retire at the present, her decision to continue employment, at least until she can receive the maximum benefit available to her under the retirement plan, is hers to make. Consequently, the trial court's award of the home to the defendant and the pension to the plaintiff in this case gives plaintiff, upon termination of the community, little more than an "expectancy" of an asset. Moreover, when one considers the additional requirement that the plaintiff make an equalizing payment to the defendant, the trial court's allocation of the community property is simply inequitable under these circumstances and works an unnecessary hardship upon the plaintiff. The "unbridled" use of the present cash value method to divide the community interest in an unmatured pension is not justified where, as in this instance, the interests of the employee spouse are not adequately taken into account. See Katherine Shaw Spaht, To Divide or Not to Divide the Community Interest in an Unmatured Pension: Present Cash Value Versus Fixed Percentage, 53 La. L.Rev. 753, 769-70 (1993) (cautioning that "there are some cases where the `fixed percentage' may be extremely useful and the only way to properly protect the legitimate interests of the employee spouse"). We *183 therefore find in this case that divesting the plaintiff of her share of, at best, the only semi-liquid asset of any consequence is far too exacting a means for leaving her the entirety of an asset which, as a practical matter, will do her no good for some time to come. See Bailey, supra at 385 (Orme, J. concurring).
Consequently, we hold that the trial court erred in employing the present cash value method for allocation of the pension rights in this case. The nature of these two assets, an unmatured pension and an unencumbered piece of immovable property, when considered along with the lack of sufficient marital assets to lessen the impact of such an award on the wife, simply precludes a finding that the trial court fairly allocated the community assets.
We cite with approval, however, the court of appeal's conclusion that deferring distribution of the pension in this case does not automatically require that the trial court, on remand, order the sale of the family home. Blanchard, supra, 697 So.2d at 280. Among the relevant considerations of the trial court judge is the fact that the house was the childhood home of the defendant and that sale of the home to the highest bidder may not necessarily protect either the plaintiff or the defendant if the sale price is less than its appraised value. See LSA-RS 9:2801(4)(c) (the court shall consider the source of the asset and "any other circumstances that the court deems relevant"). Additionally, as noted by the court of appeal, LSA-RS 9:2801(4)(c) gives the trial court the discretion to allocate the asset to one spouse while "order[ing] the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct." Blanchard, supra, 697 So.2d at 280.

Conclusion
We therefore hold that the court of appeal was correct in reversing the district court's allocation of the two major community assets. The district court's award failed to adequately consider the distinct nature of these two assets, as is instructed in LSA-RS 9:2801, and the fact that the community was composed of insufficient assets to ensure that present cash valuation of the pension would not cause undue hardship to the employee spouse. See Hare, supra. Thus, we affirm the judgment of the court of appeal.

Decree
Accordingly, the judgment of the court of appeal is affirmed, and the case is remanded to the district court for further proceedings consistent with the views expressed herein.
MARCUS and JOHNSON, JJ., dissent and assign reasons.
VICTORY, J., dissents.
MARCUS, J. (dissenting).
In this case, the trial judge partitioned community assets that include the plaintiff's interest in a defined benefit pension plan in which she is fully vested and under which she can retire at any time at her option. Relying on the stipulated present cash value of the retirement plan, the trial judge allocated the retirement benefits in their entirety to the plan-holder wife. He allocated the former family home, which had a similar stipulated value, to the husband. This real estate had been the boyhood home of the husband and was sold to the couple by his family.
La. R.S. 9:2801(c) provides that in allocating assets and liabilities in a partition proceeding, the trial judge may allocate an asset in its entirety to one of the spouses. In determining how to best effectuate a partition, the trial judge is to consider not only the nature of the assets, but also
the source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant.
*184 Moreover, as we noted in our decision in Hare v. Hodgins, 586 So.2d 118 (La.1991), the present cash value method of valuing pension rights is frequently a preferred method where there is sufficient equivalent property to satisfy the claims of the non-employee spouse without undue hardship to the employee spouse. In my view, the trial judge did not commit manifest error in weighing the multiple considerations suggested by La. R.S. 9:2801(c) to determine that the entirety of the wife's retirement plan could be allocated to the wife and the entirety of the similarly valued former boyhood home of the husband could be allocated to the husband without undue hardship to either party.
Accordingly, I respectfully dissent.
JOHNSON, Justice, dissenting.
La. R.S. 9:2801 gives to the district courts vast discretion in effectuating community property settlements. The court may divide a particular asset or liability equally or unequally. It may allocate an asset in its entirety to one of the spouses, the only consideration being allocation of the community assets and liabilities so that each spouse receives property of equal net value. The trial judge in the instant case clearly had statutory authority to allocate the house to Mr. Blanchard and the pension rights to Mrs. Blanchard.
At the time of trial, Plaintiff had been employed by the Jefferson Parish School System as an accountant for twenty-two years. As a Jefferson Parish School System employee, she had a pension account with the Teacher's Retirement System of Louisiana.[1] The parties have stipulated that the community portion of this pension account is valued at $50,267.[2] The parties have also stipulated that the family home is valued at $44,000.[3] In the present case Mrs. Blanchard argues that in awarding the pension rights to her, the trial court awarded her only a hope of a future benefit rather than tangible property that she could liquidate, sell, transfer, or dispose of. She asserts that the pension is an incorporeal right to future benefits which is contingent upon certain circumstances, and that its true value is speculative. She maintains that the home, on the other hand, is a corporeal immovable with a marketable and redeemable fixed present cash value that can be used immediately. Her position is that the retirement account does not translate in value the same way immovable property does in the market place. Plaintiff further argues that she cannot access her asset without terminating her current employment. Defendant, on the other hand, argues that the community assets were equally and equitably divided between the parties by the trial court.
Mrs. Blanchard's rights in her pension are fully vested and cannot be forfeited even though those rights have not matured. The trial court in the instant case applied the "present cash value" method to apportion the unmatured pension instead *185 of the "fixed percentage" method. In general, the valuation and division of pension rights is a matter for the trial court's discretion. Hare v. Hodgins, 586 So.2d 118, 124 (La.1991). Neither the Civil Code nor the Louisiana Revised Statutes contains any provisions that require courts to follow the fixed percentage method to the exclusion of others. Because of the great variations in pension plans and factual situations, no one method of valuation can accomplish justice in every case. Therefore, it is essential that trial courts are allowed flexibility, and are able to take advantage of reasonable alternatives and adjustments in order to accomplish an equal distribution in an equitable manner.
In this case, the trial court has given a worker full ownership of her retirement account. However, she makes the unusual argument in this court that we should uphold the court of appeal opinion which designates her ex-spouse as co-owner of the pension plan until her retirement. In my mind, the trial court was correct in its allocation of community assets. With divorce cases, the goal is to bring some finality to the proceedings. The last step in this process is usually the partition of community property. The purpose of the partition is to bring an end to the shared community, so that each spouse exits the marriage with separate property to manage and control. The goal is to end ownership in indivision where practicable. Here, Mr. Blanchard can neither manage nor control his rights to the pension because Mrs. Blanchard, as the employee spouse, has total control over when her pension will mature. Mrs. Blanchard's pension will only mature when she decides to stop working. The choice as to whether or not Mrs. Blanchard will continue working is entirely up to her. When at all possible, a divorced spouse should not be held hostage by an ex-spouse's choices.
NOTES
[*] Traylor, J. not on panel. See Rule IV, Part 2, § 3.
[1] The other community assets allocated at the hearing were furniture, with a stipulated value of $3,500 (equally divided between the parties), a 1987 Dodge truck, with a stipulated value of $3,287.00 (allocated to Mr. Blanchard), and an automobile, with a stipulated value of $100 (allocated to Ms. Blanchard). The trial court's allocation of these items is not in dispute.
[2] A Qualified Domestic Relations Order is an order "made pursuant to a state domestic relations law (including a community property law) which creates or recognizes the existence of an alternate payee's right to, or assigns an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan and relates to the provision of alimony payments, or marital property rights to a spouse or former spouse." Elizabeth Alford Beskin, Retirement Equity Inaction: Division of Pension Benefits Upon Divorce In Louisiana, 48 La. L.Rev. 677, 683-84 (1988).
[3] Plaintiff's pension is likely at a point on a continuum between non-maturity and maturity. She can retire at present, and therefore all conditions precedent to payment have taken place or are within her control. See Koelsch v. Koelsch, 148 Ariz. 176, 713 P.2d 1234, 1236 n. 2 (Ariz.1986); In re Gillmore, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1, 2 n. 2 (Cal.1981) (where only factor preventing immediate payment of monthly benefits is employee's refusal to retire, pension is mature). However the date upon which benefits are to commence is yet undeterminable as Ms. Blanchard has opted to defer retirement until she has accrued at least thirty years of service, which will allow her to maximize her benefit amount under the retirement plan. See Beskin, supra, at 680 (benefit maturity represents the date upon which benefit payments are to commence).
[4] The net present value of Ms. Blanchard's interest in the Teacher's Retirement System on November 6, 1995, in the opinion of Mr. Blanchard's expert, was $100,672.47. Assuming Ms. Blanchard does not retire until the 2004 date, the net present value of her interest in the pension was calculated to be $83,779.86.
[5] The difference in benefit amount arises from the difference in the benefit equation. Upon reaching thirty years of service, plaintiff's benefit is calculated by multiplying her total years of service by 2½ %, versus 2%, times the highest average compensation, defined as the "annual average of the three highest years' salary...." Louisiana Teacher Retirement Handbook p. 5 (Revised ed. August 1995). The difference in monthly benefit amount would be $1,225.33 per month versus $692.06 per month.
[6] The community fraction of this less than 100% funded pension grows smaller with each additional year worked by the plaintiff after termination of the community under the Sims formula, which is used to calculate the community's interest in a pension. See Sims v. Sims, 358 So.2d 919 (La.1978). The Sims formula consists of a fraction in which the numerator is the amount of time the employee spouse has worked towards the pension during the community, and the denominator is the total amount of time worked towards the pension. Id. at 924. Consequently, with each year plaintiff works after the community has terminated, the community percentage of the pension grows smaller. Whether there will be a concomitant increase in the amount of the pension because of any potential salary increase may or may not have been accounted for by the defendant's expert, whose opinion is reflected only in the form of a letter and not live testimony. When arriving at the 2004 figure, the expert did so based on an increased monthly benefit amount, with all other facts and assumptions remaining the same.
[7] Plaintiff's brief states, "the parties [have] stipulated to the values of the house and the retirement of Charlene Arcement Blanchard." Plaintiff's brief at p. 1.
[8] The trial court's decision to use the 2004 date as the date of plaintiff's potential retirement resulted in a substantial decrease in the community percentage of the pension to be divided. This decision was presumably made because the plaintiff testified that she did not intend to retire at the time of the partition hearing and had no anticipated retirement date. Neither party, however, has assigned this as error.
[9] LSA-RS 9:2801 reads in pertinent part:

(4)(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant....
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
LSA-RS 9:2801 (West Supp.1999) (emphasis added).
[1] La. R.S. 11:761 states that a member of the pension plan may retire after twenty years of creditable teaching service. (emphasis added). Mrs. Blanchard is eligible for membership in this pension plan despite the fact that she is an accountant and not a teacher. The word "teacher" has been defined for purposes of this pension plan as, "... any employee of a city or parish school board, parish or city superintendent, or assistant superintendent of public schools ..." La.Rev.Stat. Ann. § 11:701(23)(a) (1993). The term "teacher" has been interpreted by the Office of the Attorney General to include clerical employees and teacher's aides. See, Op. Att'y Gen. 87-9 (1987).
[2] The value of Mrs. Blanchard's pension at the time of trial was $100,672. The community portion of this amount is eighty-seven percent or $87,585. However, Mr. Blanchard agreed to use the value of the pension on November 7, 2004 and stipulated that the community portion of the pension is only sixty percent or $50,567. November 7, 2004 is the date on which Mrs. Blanchard will have thirty years of service in the Jefferson Parish School system.
[3] In order to equalize the amounts that each party received, the trial judge ordered Mrs. Blanchard to pay $3,079 to Mr. Blanchard.