JgCHEHARDY, Judge.
The issue on this appeal is whether the trial court erred in homologating an eight-year-old community property settlement agreement between the parties, Judy Brig-nac Songy and Edmond Joseph Songy, Jr.. We affirm, finding the court did not err in adopting the agreement as a judgment.
Mr. and Mrs. Songy were judicially separated on March 30, 1990. They signed an agreement settling the community property on the same day. The agreement provided for the division of various property between the parties, including several parcels of real estate. In addition the agreement provided that Edmond Songy did thereby “grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver, with all legal warranties and with full substitution and subrogation” to Judy Songy and that “[a]ny and all survivorship benefits which are in effect as of March 30, 1990 are to remain in full force and effect.”
In turn, Mrs. Songy transferred to Mr. Songy “[a]ll of her rights to any and all pension or retirement accounts that may be in the name of Edmond Joseph Songy, Jr. at Dupont.” The agreement was not reduced to judgment, although it was filed into the mortgage and conveyance records.
|sOn March 11, 1991 the Songys executed an additional agreement which provided, among other matters, that Mr. Songy acknowledged the March 30, 1990 community property settlement, agreed it would not be challenged “by him, his agents, heirs or assigns,” and further acknowledged that the settlement is not lesionary. The March 11, 1991 agreement further stipulated, “Edmond Joseph Songy, Jr. fully understands that the Survivorship Benefits through his employment with DuPont which have been granted unto Judy Brig-nac Songy cannot be changed and this agreement and a copy of the community property settlement shall be sent to Du-pont [sic].”
The Songys were divorced in February 1992. On February 27, 1996 Mr. Songy completed an application for his pension. On the application form his marital status was listed as “single.” He also responded “no” when asked, “Do any of the following apply: ... Qualified Domestic Relations Order (QDRO)”.[1] Mr. Songy retired on March 31,1996.
In June 1997 counsel for Mrs. Songy wrote to DuPont inquiring about Mrs. Songy’s right to survivor benefits. The DuPont employee benefits coordinator responded that the community property settlement agreement of March 30, 1990 is not enforceable against DuPont Pension and Retirement Plan because it “is not a court order and it clearly does not meet the requirements for a Qualified Domestic Relations Order (QDRO) as defined in Section 414(p) of the Internal Revenue Code.” The benefits coordinator’s letter continued:
Mr. Songy terminated his employment with DuPont on March 31, 1996 and he elected to begin receiving his benefit from the Plan effective April 1, 1996. At the time of his retirement, he was a *124 single man and there was no QRDO in effect that awarded all or a portion of any type of survivor | ¿benefit to a former spouse. Therefore, the form of benefit was established as a single life annuity payable over the participant’s lifetime without any survivor benefits. Once a participant elects to begin receiving benefits from the Plan, the form of benefit cannot be changed or altered. Therefore, there are no survivor benefits available for the former spouse.
In September 1997 Mrs. Songy filed a rule for contempt against Mr. Songy, alleging a breach of their agreement. Mr. Songy responded with a rule for sanctions, on the ground that Mrs. Songy’s counsel knew there was no court order from which Mr. Songy could be held in contempt. Mrs. Songy then filed a motion to dismiss the rule for contempt without prejudice and a rule to approve and homologate the community property settlement. After a hearing, on June 30, 1998 the trial court dismissed Mr. Songy’s rule for sanctions and homologated the community property agreement. Mr. Songy has appealed.
On appeal Mr. Songy contends the trial court erred in homologating the community property settlement agreement because of the passage of time. He invokes the doctrine of laches, arguing that during the eight-year interval between signing of the agreement and the filing of the petition to homologate it, there were numerous transactions in which each party relied upon the actions and inactions of the other party, alienating or encumbering the properties which were the subjects of the agreement. Further, he asserts, the intervening acts and inactions of the parties have made the terms of the agreement a present and future impossibility, so that homologating the agreement enforces things which no longer can be subject to partition.
Specifically, Mr. Songy refers to the following transactions: In 1990 the Bellevue property (over which the parties had retained joint ownership) was transferred to a bank in a dation. In 1992 Mrs. Songy placed a $25,000 mortgage on the Windsor Drive home (allocated to her in the settlement). In 1992 the property at 2812 Williamsburg Drive (also allocated to Mrs. Songy) was seized and sold. In 1993 condominium Unit No. 13 at 1600 Marseilles (allocated to Mr. Songy), was seized and sold. In 1993 the 1984 truck (allocated to Mr. Songy) was sold. In 1993 the second mortgage on the Windsor Drive | .^property was paid and satisfied. In 1996 Mr. Songy retired from DuPont and applied for his retirement benefits.
Mrs. Songy contends that a grave injustice would occur if laches were applied to bar her claim. She would have no recourse against Mr. Songy. He is now receiving his full retirement benefit, approximately $1,900 per month, because there was no reservation of survivor benefits for Mrs. Songy. Had there been such a reservation he would be receiving a monthly retirement benefit of less than half the amount he now receives. Since it is too late to file a QDRO with DuPont, Mrs. Songy desires ultimately to have Mr. Songy take out a life insurance policy in the amount of the survivor benefits that would have been payable to her had the reservation been made.
Neither the community nor things of the community may be judicially partitioned prior to the termination of the community regime. La.C.C. Art. 2336. During the existence of the community property regime, however, the spouses may, without court approval, voluntarily partition the community property in whole or in part. Id. The partition is effective toward third persons when filed for registry. Id.
Following termination of the matrimonial regime, if the spouses are unable to agree on a partition of community property, either spouse may institute a proceeding to partition the community property and to settle any claims against each other. La. R.S. 9:2801.
Although there is no explicit provision stating that after termination of the *125 community the spouses may still partition voluntarily without court approval, such a conclusion is implicit in the language of La. R.S. 9:2801 and La. C.C. art. 2337. Accordingly, the procedure followed by counsel at the time the partition agreement was made was not invalid.
The right to receive a death benefit is a right in the plan, even if it was a future right at the time the settlement was executed. Contois v. Contois, 94-270 (La.App. 3 Cir. 12/7/94), 649 So.2d 750, 753.
La. C.C. Art. 3457 states there is no prescription other than that established by legislation. This has been interpreted to mean that under the Louisiana legal system, there is no room for the common law doctrine of laches. Revision Comments-1982, following La. C.C. Art. 3457. “The common law doctrine of laches does not prevail in Louisiana and the legislature may create, shorten, lengthen or abolish prescriptive periods at its discretion.” Picone v. Lyons, 601 So.2d 1375, 1377 (La.1992).
Nevertheless, numerous cases have discussed and applied the doctrine. Laches has been defined as follows:
The doctrine of laches is predicated on equity. It addresses itself to the evi-dentiary effect of delay. It is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of a matter in controversy, and doing justice between parties and on the public policy of discouraging stale and antiquated claims in the interest of the peace and repose of society.
Barnett v. Develle, 289 So.2d 129, 139 (La.1974). “What constitutes laches is to be determined in the light of the circumstances of the particular case. The doctrine’s application is controlled by equitable considerations; it cannot be invoked to defeat justice; it will be applied only where the enforcement of the right asserted would work injustice.” Labarre v. Rateau, 210 La. 34, 26 So.2d 279, 285 (1946).
The current view of our Supreme Court js that laches may be applied only in “rare an(j extraordinary circumstances.” T.D. v. M.M.M., 98-167 (La.3/2/99), 730 So.2d 873, 877, 1999 WL 105286, *5.
We find no rare and extraordinary circumstances in this case that would require our invoking the doctrine of laches. Edmond Songy, Jr. acknowledged in two separate agreements his former wife’s right to survivorship benefits through his DuPont employment. As pointed out by the trial court, the community property settlement agreement was a binding transaction and compromise pursuant to La. C.C. Art. 3071. Under La. C.C. Art.1983, it has the effect of law between the parties, who were bound to perform it in good faith.
|7Mr. Songy, therefore, must be held to have been fully aware when applying for his pension benefits that he had contracted to leave survivorship rights to Mrs. Songy. Any prejudice he may suffer now from having to make another arrangement to secure an analogous benefit for her is not caused by her delay in homologating the judgment, but in his failure to uphold his part of the agreement.
Nor do we find merit to his claim of prejudice resulting from the parties’ actions/inactions relating to the other properties mentioned in the settlement agreement. Those properties were divided pursuant to the agreement and the parties’ actions thereafter did not violate any of the agreement’s terms.
Accordingly, we find no reason to disturb the ruling of the trial court. The judgment is affirmed. All costs are assessed against the appellant.

AFFIRMED.

. The term "Qualified Domestic Relations Order” has been defined by our Supreme Court as "an order 'made pursuant to a state domestic relations law (including a community property law) which creates or recognizes the existence of an alternate payee’s right to, or assigns an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan and relates to the provision of alimony payments, or marital property rights to a spouse or former spouse.’ ” Blanchard v. Blanchard, 97-2305 (La.1/20/99), 731 So.2d 175, 180, 1999 WL 20779 *9.