831 So.2d 416 (2002)
Proveaux A. DONALDSON
v.
Georgia Berry McAdams DONALDSON.
No. 02-CA-111.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*417 Ferdinand J. Kleppner, Metairie, LA, for Proveaux A. Donaldson, Appellant.
Crystal L. Craddock-Posey, New Orleans, LA, for Georgia Berry McAdams (formerly Donaldson), Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
In this action to partition community property, Proveaux Donaldson appeals a judgment that found his former wife entitled to twenty-four percent of his gross monthly retirement benefits and ordered payment of her share of benefits, both past and future, be included in a Qualified Domestic Relations Order ("QDRO"). We vacate the judgment and remand with instructions to the trial court.
Proveaux A. Donaldson and Georgia Berry McAdams married in 1959. Donaldson filed for and obtained a judgment of separation from bed and board in 1978 and a judgment of divorce in 1979. He retired from his employment on July 1, 1998 and began receiving pension benefits. On August 24, 1999 McAdams filed a petition for judicial partition of community property, in which she sought partition of Donaldson's pension plan.
Prior to trial of the partition the parties stipulated to a number of uncontested facts, which were included by the trial court in its findings of fact. Among these were the following:
1. Proveaux Donaldson began working for New Orleans Public Service, Inc. (subsequently, Regional Transit Authority) on May 16, 1960 and retired from employment on July 1, 1998.[1]
2. He was employed by New Orleans Public Service, Inc. (subsequently, Regional Transit Authority) for a total of thirty-eight years, one month and fifteen days.
3. The total period during which Donaldson was employed during the marriage until suit for legal separation was filed was seventeen years, ten months, and twenty-five days.
4. Donaldson was employed 13,915 days, of which he was married to Georgia McAdams 6,570 of those days, or forty-seven percent of the time that he was employed by New Orleans Public Service, Inc. (subsequently, Regional Transit Authority).
5. From the date of his retirement, beginning July 1, 1998, through the month of June 2001, gross benefits disbursed before taxes total $50,743.80, which includes thirty-six monthly payments. Donaldson has received thirty-six net monthly payments of $1,338.98 per month.
Further, the parties agreed that McAdams' share of any benefits inuring to the community is twenty-four percent.
*418 The contested issues were whether McAdams's one-half of the forty-seven percent of the retirement benefits earned during their marriage should be assessed against the gross monthly benefits or from the net monthly benefits and whether the method used to calculate McAdams's share of the retirement benefits should be the Sims formula[2] or the Hare formula.[3]
At trial Donaldson testified that when he went to work for New Orleans Public Service, Inc., his position was streetcar motorman. In October 1980 he was promoted from bus operator to dispatcher. Asked whether the promotion was based on "meritorious performance," he replied, "Yeah, and experience and knowledge and that sort of thing." He affirmed that it was considered a management position and carried with it an increase in wages. He served as a dispatcher from the time of his promotion until he retired almost eighteen years later. He testified that he has a high-school education and that his promotion to dispatcher was a "slight increase in position, a supervisory position." He said the difference in wages at the time he was promoted was $3.25 to $3.50 an hour.
Maggie Foster, the TMSEL plan administrator, testified as a witness on behalf of Donaldson. According to her records, Donaldson was employed by New Orleans Public Service, Inc. in May 1960 and became a member of the plan on September 1, 1961. At the time of trial his gross monthly retirement benefit was $1,409.55.
Foster explained the formula used to determine the amount of a plan member's benefit as follows: Out of the last ten years of the employee's earnings prior to the date of retirement, they take the highest five consecutive years of earnings, determine the average monthly earnings, multiply that figure by 1.5, then multiply the result by the employee's total years of benefit service. Foster said the TMSEL plan is a defined benefit plan, based on amounts the employee is earning currently as opposed to amounts in the past.
Foster also testified that Donaldson was able to retire at age 62 with the full benefits he would have received by waiting until age 65 to retire, because of the "Thirty-and-Out" program. She said the Thirty-and-Out program was put in place in 1996 as a result of collective bargaining negotiations. Under it, all employees were required to contribute a portion of their wages to fund the program, which in turn allowed the opportunity to retire, regardless of age, after attaining 30 years' credit in the retirement plan. She said Donaldson contributed to the program from the time it was instituted, in April 1996, until his retirement date of July 1, 1998. She stated that if not for the Thirty-and-Out program, Donaldson still could have retired at age 62, but his retirement benefit would have been reduced by nine percent (three percent per year). Thus, she testified, nine percent of the money he is presently receiving is the direct result of money that was taken out of his wages from 1996 until 1998.
Foster stated further that because the Thirty-and-Out program was part of a collective bargaining agreement, Donaldson could not have elected to stay out of the program and take a nine-percent cut in his benefits instead.
The trial judge ruled from the bench at the close of the evidence. She issued oral reasons for judgment, finding that Donaldson was paid through a "very good" collective *419 bargaining agreement from the beginning through the end of his employment, that there was no indication that Donaldson had "a large jump" at any point in his career, and that the testimony did not establish the difference made by overtime wages paid to bus drivers, except that bus drivers earn more overtime than dispatchers. The court felt the Sims formula must be applied, so that McAdams is paid fifty percent of forty-seven percent of Donaldson's retirement, out of the gross, because forty-seven percent of Donaldson's retirement was earned during the course of their marriage. The court also found that Donaldson must pay McAdams for past pension distribution payments she had not received.
In accordance with the oral reasons, the court rendered judgment holding that the Sims formula applies to the instant matter and computing McAdams's share of the retirement benefits as twenty-four percent of the gross monthly benefits. The court awarded McAdams a lump-sum amount of $12,178.51 for her share of retirement benefits already received by Donaldson to date of the judgment, to be paid at the rate of $300.00 per month "via a Qualified Domestic Relations Order until paid in full," as well as twenty-four percent of future retirement benefits payable to him. Pending confection of the QDRO, Donaldson was ordered to deposit into the court registry twenty-four percent of his gross monthly benefit check, subtracting twenty-four percent of taxes paid from each check, in addition to the $300.00 per month toward payment of the benefits previously received by him that belonged to McAdams.
Donaldson filed a suspensive appeal. As directed by the trial court, he posted a bond in the amount of $12,178.51, the amount of past benefits owed to McAdams.
On appeal Donaldson contends the trial court erred as follows: (1) in applying, without modification, the "fixed percentage" method of Sims v. Sims, supra; (2) in computing back benefits on the gross amount received by Donaldson without credit for the actual tax paid by him; and (3) in ordering that payments from Donaldson to McAdams be made via Qualified Domestic Relations Order, which Donaldson contends amounts to a de facto seizure of a portion of his future retirement benefits.
In response, McAdams asserts that the stipulated facts, testimony and evidence at trial all support the application of the Sims formula to this case, that Donaldson owes McAdams her portion of the gross retirement benefits he received, and that Donaldson should either forfeit his appeal bond to appellee to pay for the back benefits owed her, or have it garnished from his retirement benefits or other income.

CALCULATION OF McADAMS' SHARE OF BENEFITS
Donaldson asserts that the pension benefits in this case matured over 20 years post-divorce prior to the filing of the petition for partition. He points out the record reflects that the benefits are paid based upon his recent, post-divorce earnings, rather than upon factors that accrued during existence of the community. In addition, he argues, his increased earnings were to a great extent the result of his meritorious promotion from streetcar motorman to dispatcher, which occurred more than two years after termination of the community and resulted in a pay increase of $3.25 or $3.50 per hour.
Further, he points out there was a nine percent increase in benefits due to his post-divorce payment of cash into the "Thirty and Out" program. He contends a rigid application of the fraction formula of *420 Sims results in substantial inequity. He asserts that the benefits payable to him have matured and are substantially enhanced by his increased earning ability, his meritorious promotion, and his cash contributions to the plan, all of which occurred many years after termination of the community.
In contrast, McAdams points to Donaldson's testimony that he had a high-school education and that he obtained no further education during his employment with New Orleans Public Service, Inc./Regional Transit Authority, as well as his admission that he had more opportunity to earn overtime as a bus driver/motorman that he did as a dispatcher. McAdams cites the testimony of Maggie Foster that the various income increases Donaldson received during his employment were mainly due to collective bargaining efforts of the union and that her records did not show that Donaldson received any increase in income due to his personal meritorious efforts or achievements.
We note, first, that La.R.S. 9:2801(A)(4)(a) requires that the court value the community assets as of the time of trial on the merits.
In Sims v. Sims, supra n. 2, the issue was partition of a pension that had not yet matured (that is, the employee spouse was not yet eligible to retire). The supreme court pointed out that a spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to his employment during the community, an asset of the community. 358 So.2d at 922. Thus,
[A]t the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit-sharing plan or contract, if and when they become payable, with the spouse's interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
358 So.2d at 922-923.
Until the employee is separated from the service, dies, retires, or becomes disabled, no value can be fixed upon his right to receive an annuity or upon lump-sum payments or other benefits to be paid on his account. Sims, 358 So.2d at 923. When the community is dissolved, however, the non-employed spouse is entitled to have recognized his or her one-half interest in this community asset, i.e., the right to receive payments from employee benefit plans, to the extent (proportion) that these payments result from the employment or contributions during the community. Id.
When the employer's liability becomes fixed by the employee's retirement or separation or death and payments become due, so as to have a determinate value, the non-employed spouse is entitled to receive the proportion of them attributable to the other spouse's employment during the existence of the community. Sims, 358 So.2d at 924.
In Hare v. Hodgins, 586 So.2d 118 (La. 1991), the court held that where a pension right ascribable to the community is not partitioned prior to its maturity, each spouse is entitled to a distribution based on the actual value of the fully matured pension. 586 So.2d at at 121. However, "[i]f substantial post-community increases in the pension benefits were due to the employee spouse's individual meritorious efforts or achievement, and not related to prior contributions ascribable to the community, the percentage of the pension asset recognized as community property should be decreased accordingly." Id.
*421 Here, the trial court found that Donaldson was paid through a collective bargaining agreement throughout his employment and that there was no indication he had "a large jump" at any point. The judge was unable to determine what would be earned by the overtime paid bus operators, which was more than the overtime earned by dispatchers.
The judge did not comment, however, on Donaldson's testimony that his promotion to dispatcher was the result of his meritorious performance, experience and knowledge. We cannot say that the court disbelieved his testimony. Rather, it appears the judge felt she had insufficient figures on which to calculate what difference was made by the pay increase Donaldson received with that promotion.
In reviewing the record, we too are unable to find figures that would enable us to calculate the difference the promotion made in Donaldson's eventual retirement benefits. Although he testified the pay increase was $3.25 to $3.50, it is not clear whether he meant he was earning $3.25 as a bus operator and then was increased to $3.50 as a dispatcher, or whether his hourly wage as a bus operator was increased by $3.25 to $3.50 per hour. Accordingly, we find no basis on which to disturb the trial court's ruling on that point.
We find, however, that the nine-percent increase in Donaldson's benefits he obtained through his contributions to the Thirty-and-Out program should not be subject to McAdams' claim. Despite the fact that it was earned by mandatory contributions Donaldson made as a result of his union membership, the contributions were made between 1996 and 1998 long after the marital community had ended-and they were made with Donaldson's entirely separate funds.
We refer to Schlosser v. Behan, 98-280 (La.App. 5 Cir. 11/25/98), 722 So.2d 1129, writ denied, 98-3165 (La.3/26/99), 739 So.2d 791. In that case this Court found that a claimant spouse was not entitled to funds in the retiree spouse's Deferred Retirement Option Plan (DROP) because the retiree spouse qualified for and entered the DROP many years after the marital community had ended and the funds he received as a result of the DROP were solely due to the retiree's personal decisions and efforts long after the community ceased. The DROP came into existence more than 10 years after termination of the marital community and the retiree did not begin participation in DROP until 17 years after termination of the community.
We analogize the Thirty-and-Out program in this case to the DROP. The program did not come into existence until many years after the marital community between Donaldson and McAdams had ended and all contributions Donaldson made toward it were from funds he earned in the last three years of his employment, nearly 20 years after the marital community terminated.
Similarly, in Mechana v. Lambert, 93-1204 (La.App. 1 Cir. 4/8/94), 635 So.2d 747, the appellate court found the community should not given credit for a post-termination enhanced benefit package given to the husband to induce him to accept early retirement, because the husband's early retirement incentives were not acquired during the existence of the marriage and were not fairly ascribable to the community. 635 So.2d at 751.
Accordingly, the amount of the gross benefit should be reduced by nine percent before calculating McAdams' share of each benefit.

CREDIT FOR TAXES PAID
The trial court awarded McAdams a lump-sum amount of $12,178.51 for retirement *422 benefits already received by Donaldson to date of the judgment (36 payments totaling $50,743.20), to be paid at the rate of $300.00 per month, as well as twenty-four percent of future retirement benefits payable to him. Donaldson was ordered to deposit into the court registry twenty-four percent of his gross monthly benefit check, subtracting twenty-four percent of taxes paid from each check, in addition to the $300.00 per month payment toward satisfaction of the past benefits.
However, the judgment does not indicate that the court gave Donaldson credit for taxes he paid on the gross amount of his pension distributions from June 1998 through June 2001.
The trial court computed McAdams's share of benefits already paid to Donaldson based on the gross amount Donaldson received. He contends that was fundamentally inappropriate because it requires him to reimburse McAdams on the gross amount, despite the fact that he has paid taxes on those amounts already. He argues he should receive credit for taxes actually paid on the benefits he has already received. He is correct. See Overton v. Overton, 97-45, p. 8 (La.App. 5 Cir. 04/29/97), 694 So.2d 491, 495. Therefore, we direct the trial court on remand to award credit to Donaldson for taxes he actually paid on benefits he received.

USE OF QDRO
Donaldson argues that the trial court erred in directing that past pension benefits be repaid to McAdams under a Qualified Domestic Relations Order, or QDRO, which would authorize the plan administrator to withhold McAdams' share of benefits, not only future benefits but the debt owed for her unpaid community share of past benefits, from Donaldson's pension distributions.
Our supreme court has described a QDRO as follows:
A Qualified Domestic Relations Order is an order "made pursuant to a state domestic relations law (including a community property law) which creates or recognizes the existence of an alternate payee's right to, or assigns an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan and relates to the provision of alimony payments, or marital property rights to a spouse or former spouse."
Blanchard v. Blanchard, 97-2305 (La.1/20/99), 731 So.2d 175, 176 n. 2, citing Elizabeth Alford Beskin, "Retirement Equity Inaction: Division of Pension Benefits Upon Divorce In Louisiana," 48 La. L.Rev. 677, 683-84 (1988).
In Blanchard the court noted that use of the "fixed percentage" or Sims method of apportioning a defined benefit plan "involves recognition of the right of the non-employee spouse to a judgment recognizing his interest in proceeds from a retirement plan, `if, as, and when' they become payable, usually in the form of a Qualified Domestic Relations Order (`QDRO')." 731 So.2d at 179. Under Blanchard, therefore, clearly the non-employee spouse may ensure payment of his or her interest in benefits by use of a QDRO.
The question here, however, is whether a QDRO may be used to obtain any portion of the benefits already paid to Donaldson.
La.R.S. 20:33(1) provides that all pension tax-deferred arrangements and annuity contracts, "as defined and to the same extent prescribed in R.S. 13:3881," shall be exempt from all liability for any debt except alimony and child support.
La.R.S. 13:3881 provides, in pertinent part:

*423 D. (1) Except as provided in Paragraph 2 of this Subsection, the following shall be exempt from all liability for any debt except alimony and child support: all pensions, all tax-deferred arrangements, annuity contracts, and all proceeds of and payments under all tax-deferred arrangements and annuity contracts, as defined in Paragraph 3 of this Subsection.
* * *
(3) The term "tax-deferred arrangement" includes all individual retirement accounts or individual retirement annuities of any variety or name, whether authorized now or in the future in the Internal Revenue Code of 1986, or the corresponding provisions of any future United States income tax law, including balances rolled over from any other tax-deferred arrangement as defined herein, money purchase pension plans, defined benefit plans, defined contribution plans, Keogh plans, simplified employee pension (SEP) plans, simple retirement account (SIMPLE) plans, or any other plan of any variety or name, whether authorized now or in the future in the Internal Revenue Code of 1986, or the corresponding provisions of any future United States income tax law, under which United States income tax on the tax-deferred arrangement is deferred. The term "annuity contract" shall have the same definition as defined in R.S. 22:647(B).
In Sanders v. Sanders, 34,089 (La.App. 2 Cir. 11/1/00), 780 So.2d 390, writ denied, 00-3275 (La.1/26/01), 782 So.2d 1026, the trial court had ordered the pension plan of the retiree spouse to pay the retiree's community portion of the pension to the claimant spouse for a six-year period to satisfy the debt the retiree owed the claimant for her share of benefits paid him by the pension plan since his retirement. The retiree appealed, asserting that the order was an unlawful seizure of his share of the retirement benefits.
On appeal, the Second Circuit found that the payment of the back benefits was neither an equalizing payment nor an allocation of a community asset. 780 So.2d at 392. Rather, it was intended to reimburse the claimant for her portion of the retirement benefits previously collected by the retiree. Id. Hence, the court found the award of the amount in favor of the claimant was a judgment in her favor for monies owed to her by the retiree. Id.
The court noted that, although the trial court has broad discretion in settling claims between spouses in partition proceedings, that discretion is limited by La. R.S. 13:3881. Id. In addition, because the pension in the Sanders case was paid by the Teacher's Retirement System of Louisiana (TRSL), La.R.S. 11:704 was more specifically applicable. Id.
La.R.S. 11:704 exempts pensions under the TRSL from "levy and sale, garnishment, attachment, or any other process whatsoever," subject to the exception provided by La.R.S. 11:291 where a QDRO is employed.[4] Further, although La.R.S. 11:291 "permits the retirement system to divide a benefit with the former spouse of a retiree who is due his or her community interest, it does not permit garnishment of the retiree's interest to satisfy a debt owed to the former spouse." Sanders, 34,089 at 5, 780 So.2d at 393.
Although the pension involved here in not one subject to La.R.S. 11:704 or 11:291, *424 we embrace the reasoning in the Sanders case. We conclude this pension is included under the language of La.R.S. 13:3881(D) and that use of a QDRO to order the plan administrator to pay McAdams for her share of benefits already been distributed to Donaldson is a forbidden seizure or garnishment.
Allocating any portion of Donaldson's share of retirement benefits not yet paid to satisfy McAdams' reimbursement claim would be contrary to legislative intent in exempting retirement benefits from process to collect debts owed by the retiree. Sanders, 34,089 at 6, 780 So.2d at 393; Dilley v. Dilley, 561 So.2d 799, 801 (La. App. 2 Cir.1990). See also, Delaune v. Modica, 99-533 (La.App. 5 Cir. 03/03/00),762 So.2d 52, writ denied, 00-1365 (La.06/30/00), 766 So.2d 541.
Accordingly, we find the trial court erred in directing that the past benefits be repaid to McAdams by inclusion in the QDRO directed to the pension fund.

FORFEITURE OF APPEAL BOND
As mentioned above, the appellee, McAdams, urges this Court to order forfeiture of Donaldson's appeal bond to her. The security furnished to perfect a suspensive appeal should remain intact until the final determination of the litigation for the protection of all persons in interest. Boes v. Boes, 99-272, p. 6 (La.App. 5 Cir. 08/31/99), 749 So.2d 697, 700. Any request for forfeiture of the appeal bond should be made to the trial court. Id. Further, McAdams neither appealed nor answered the appeal, thus we can give her no greater relief than she received from the trial court. La.C.C.P. arts.2084, 2133.

DECREE
For the foregoing reasons, the judgment is vacated and the case is remanded. The trial court is ordered to recalculate the portion of the pension benefits due McAdams consistent with this opinion to accommodate the increased benefits resulting from post-community events, pursuant to Hare v. Hodgins, supra.
In addition, the trial court is ordered to grant credit to Mr. Donaldson for actual taxes he has paid on the benefits to be divided.
Further, the court is ordered to render a money judgment in favor of Ms. McAdams for the remaining amount due on the reimbursement debt owed by Mr. Donaldson.
Finally, the court is instructed that any Qualified Domestic Relations Order shall direct all future payments of Ms. McAdams' one-half of the community portion of Mr. Donaldson's retirement benefits to her.
Costs of this appeal are assessed equally between the parties.
JUDGMENT VACATED; REMANDED WITH INSTRUCTIONS.
McMANUS, J., CONCURS IN PART; DISSENTS IN PART.
EDWARDS, J., CONCURS IN PART; DISSENTS IN PART.
NOTES
[1] New Orleans Public Service, Inc. later became Regional Transit Authority. Transit Management of Southeast Louisiana (TMSEL) administers the retirement plan for RTA employees.
[2] Sims v. Sims, 358 So.2d 919 (La. 1978), applied a "fixed percentage" valuation of pension benefits.
[3] Hare v. Hodgins, 586 So.2d 118 (La.1991), applied a "present cash value" valuation of pension benefits.
[4] La.R.S. 11:291 effectively recognizes the applicability of the QDRO to recognize the community interest of a spouse or former spouse of a member or retiree of a state or statewide retirement system and to provide for division of a benefit or a return of employee contributions by the system with the spouse or former spouse.