CHESTER WASHINGTON, JR.

VERSUS

THERESA WASHINGTON

NO. 22-CA-37

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 434-265, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING


September 28, 2022


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Robert A. Chaisson


**AFFIRMED**
    **JGG**
    **FHW**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CHESTER WASHINGTON, JR.
    Larry M. Aisola, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
THERESA WASHINGTON
    Jeanne L. O'Boyle

**GRAVOIS, J.**

Defendant/appellant, Chester Washington, Jr., appeals a money judgment in the amount of $31,514.46 made executory and in favor of his former wife, Theresa Washington, representing her share of pension benefits that Mr. Washington erroneously received. For the reasons that follow, we affirm.

<u>FACTS AND PROCEDURAL HISTORY</u>

Chester Washington, Jr. and Theresa Washington were married on July 27, 1968. They divorced on November 30, 1992. On January 10, 2003, Mr. Washington and Ms. Washington signed a Consent Judgment partitioning their community property. Relative to their pension accounts and to this appeal, the Consent Judgment provided:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED**
> that the parties retain any and all of their community rights to the following pension/retirement funds and that their interests in the following will be divided by [Qualified Domestic Relations Order][1] and according to law:
>
> 1. Louisiana State Retirement System Pension Plan for employee Theresa Washington
>
> 2. Plumbers and Steam Fitters Pension Plan for Local 60 member Chester Washington
>
> 3. State of Louisiana School Board Retirement for employee Chester Washington
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED**
> that the mutual injunctions enjoining the parties, Louisiana State Employees' Retirement System (LASERS), State of Louisiana School Board Retirement and Plumbers and Steamfitters Union Retirement systems from changing beneficiaries or withdrawing or releasing any funds from those accounts, are to remain in place and effect until the qualified domestic relations orders are served upon them.[2]

---

[1] A Qualified Domestic Relations Order ("QDRO") is an order "made pursuant to a state domestic relations law (including a community property law) which creates or recognizes the existence of an alternate payee's right to, or assigns an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan and relates to the provision of alimony payments, or marital property rights to a spouse or former spouse." *Blanchard v. Blanchard*, 97-2305 (La. 1/20/99), 731 So.2d 175, 176, n.2, citing Elizabeth Alford Beskin, *Retirement Equity Inaction: Division of Pension Benefits Upon Divorce in Louisiana*, 48 La. L. Rev. 677, 683-84 (1988).

[2] Previously, on October 20, 1999, the trial court signed a judgment which prohibited each party from changing the beneficiary or changing the application of retirement benefits in their accounts, until the community partition was complete. Additionally, each party was prohibited and enjoined from withdrawing funds from their retirement accounts, and Louisiana State Employees' Retirement System,

On June 8, 2021, Ms. Washington filed a "Motion to Compel Signature of Qualified Domestic Relations Order," requesting that the court order Mr. Washington to sign a QDRO she had previously submitted to the Plumbers and Steamfitters Local 60 Pension Fund (the "Pension Fund") on November 30, 2020. Ms. Washington alleged that Mr. Washington retired in July 2003 and began receiving payments from the Pension Fund; however, she had not received any of her portion of the pension benefits from the Pension Fund, which she claimed was $147.39 per month. Thus, she also requested that the court issue a judgment ordering Mr. Washington to pay her $147.39 per month with judicial interest from July 2003 until she would begin to receive her portion of the pension benefits directly from the Pension Fund.

The matter went before a hearing officer on August 12, 2021. There, it was stipulated that Mr. Washington would sign the QDRO.[3] Further, the hearing officer recommended that Mr. Washington pay Ms. Washington $31,541.46 in a lump sum on or before September 12, 2021 without interest for her benefits from the Pension Fund that Mr. Washington admitted to receiving from July 1, 2003 through April 30, 2021. If Mr. Washington failed to pay this amount in full by September 12, 2021, then legal interest would begin to run until the full amount was paid. The hearing officer made the $31,541.46 executory. The recommendations of the hearing officer were made the interim judgment of the court.

On August 16, 2021, Mr. Washington filed an objection to the hearing officer's recommendations and interim order. Therein he argued that pursuant to the Pension Fund's procedures for determining the qualified status of a domestic

---

Plumbers and Steamfitters Local 60 Pension Fund, and State of Louisiana School Board's Retirement were enjoined from dispensing or paying funds from the accounts.

[3] The record reflects the QRDO was signed on August 18, 2021 by both parties and the court.

relations order, Ms. Washington is not qualified for back pay since her benefits would not start until after the Pension Fund determined that her QDRO is valid.

Ms. Washington filed an opposition to Mr. Washington's objection, arguing that despite the injunctions the parties agreed to in the Consent Judgment, Mr. Washington applied for benefits from the Pension Fund without a QDRO and received both his and Ms. Washington's shares of the benefits from the Pension Fund from July 2003 through April 30, 2021. Ms. Washington argued that the Pension Fund procedure Mr. Washington relied upon in his objection is not applicable since it does not mention substantive domestic Louisiana law or what to do when a spouse improperly receives his/her partner's benefits.

Following a hearing with the trial court on October 27, 2021, the trial court signed a written judgment on November 16, 2021, overruling and dismissing Mr. Washington's objection. The trial court ordered that the hearing officer's recommendations become the judgment of the court and that Mr. Washington owes Ms. Washington $31,541.46 in her pension benefits, which he erroneously received. The judgment was made executory, and it was further ordered that judicial legal interest on the judgment amount shall commence retroactively to September 12, 2021. This appeal followed.

## LAW AND ANALYSIS

On appeal, Mr. Washington argues that the trial court erred in awarding Ms. Washington past pension benefits and making the past pension benefits executory from 2003. He argues that his pension benefits are exempt from liability pursuant to La. R.S. 20:33(1) and La. R.S. 13:3881(D), and the trial court's judgment allows for an unlawful seizure of his share of the pension benefits. He additionally argues that as per the Pension Fund's procedures for determining the qualified status of a domestic relations order, Ms. Washington is not qualified for back pay.

Mr. Washington cites to La. R.S. 20:33(1), La. R.S, 13:3881(D), and

*Donaldson v. Donaldson*, 02-111 (La. App. 5 Cir. 10/29/02), 831 So.2d 416, to

argue that his pension benefits are exempt from liability. He argues that the trial

court improperly ordered that his share of pension benefits not yet paid to him

should be seized to satisfy Ms. Washington's reimbursement claim.

Louisiana Revised Statute 20:33 provides, in pertinent part:

The following shall be exempt from all liability for any debt except
alimony and child support:

(1) All pensions, tax-deferred arrangements, and annuity contracts, as
defined and to the same extent prescribed in R.S. 13:3881.

Louisiana Revised Statute 13:3881 provides, in pertinent part:

D.(1) Except as provided in Paragraph (2) of this Subsection and in
R.S. 11:292, the following shall be exempt from all liability for
any debt except alimony and child support: all pensions, all tax-
deferred arrangements, annuity contracts, and all proceeds of
and payments under all tax-deferred arrangements and annuity
contracts, as defined in Paragraph (3) of this Subsection.

\* \* \*

(3) The term "tax-deferred arrangement" includes all individual
retirement accounts or individual retirement annuities of any
variety or name, whether authorized now or in the future in the
Internal Revenue Code of 1986, or the corresponding
provisions of any future United States income tax law,
including balances rolled over from any other tax-deferred
arrangement as defined herein, money purchase pension plans,
defined benefit plans, defined contribution plans, Keogh plans,
simplified employee pension (SEP) plans, simple retirement
account (SIMPLE) plans, Roth IRAs, or any other plan of any
variety or name, whether authorized now or in the future in the
Internal Revenue Code of 1986, or the corresponding
provisions of any future United States income tax law, under
which United States income tax on the tax-deferred
arrangement is deferred. The term "annuity contract" shall
have the same definition as defined in R.S. 22:912(B).

In *Donaldson*, this Court considered these statutes to determine whether a

QDRO could be used to obtain any portion of pension benefits already paid to a

former spouse. *Donaldson*, 831 So.2d at 422. As part of an action to partition

community property, the trial court found that the former wife was entitled to a

lump sum of $12,178.51 for her share of retirement benefits already received by

her former husband as well as 24% of her former husband's future retirement benefits, and the trial court ordered that the payment of her share of both past and future benefits was to be included in a QDRO. *Id.* at 419. On appeal, the husband argued that the trial court erred in directing that the past pension benefits be repaid under a QDRO since this would allow the plan administrator to withhold his share of benefits from his pension distributions. This Court found that the pension in question was included under the language of La. R.S. 13:3881(D), and accordingly, that the use of a QDRO to pay the wife her share of benefits that were already paid to the husband was a "forbidden seizure or garnishment." This Court noted that to pay the wife with a portion of the husband's share of pension benefits not yet paid would be "contrary to legislative intent in exempting retirement benefits from process to collect debts owed by the retiree." Thus, this Court found that the trial court erred in ordering that the past benefits be repaid by inclusion in the QDRO directed to the pension fund. *Id.* at 422-23.

Upon review, we find that Mr. Washington's reliance on La. R.S 20:33(1), La. R.S. 13:3881(D), and *Donaldson* is misplaced. Though Mr. Washington contends that the trial court ordered that a QDRO could be used to allocate a portion of his pension benefits to satisfy Ms. Washington's reimbursement claim, that is not what the judgment of the trial court actually provides. The trial court's judgment provides that Mr. Washington owes Ms. Washington $31,541.46 in her pension benefits which Mr. Washington erroneously received. It does not direct that the past benefits be paid under a QDRO, that his future pension benefits be seized in order to pay Ms. Washington, or that they be subject to garnishment.

Louisiana law has clearly held that the portion of pension benefits from one spouse's employment accrued during the marriage constitutes a community asset. *Knobles v. Knobles*, 17-233 (La. App. 5 Cir. 12/27/17), 236 So.3d 726, 730. It is undisputed that the parties signed a Consent Judgment in which they agreed to

retain their community rights to their pension/retirement accounts, and that an injunction would remain in place enjoining the parties from withdrawing funds from their pension/retirement accounts until a QRDO was served upon them. Ms. Washington alleged, and it was not disputed, that Mr. Washington did not file a QDRO prior to receiving pension benefits from the Pension Fund beginning in 2003. Further, according to the hearing officer's recommendations, Mr. Washington admitted to receiving Ms. Washington's share of the pension benefits from the Pension Fund since 2003. Thus, we find that the trial court did not abuse its discretion in finding that Mr. Washington owes Ms. Washington $31,541.46 and in making the judgment executory.

Mr. Washington also argues that according to the Pension Fund's procedures for determining the qualified status of a domestic relations order, Ms. Washington was not qualified for back pay. Mr. Washington cites to Section II(B) in the procedures, which provides:

II. PROPOSED DOMESTIC RELATIONS ORDERS

The Plan will treat Proposed Domestic Relations Orders as follows:

* * *

B. If the Plan receives a Proposed Domestic Relations Order after the Participant's benefit has commenced, this will have no effect on the Participant's receipt of his/her benefits. The Plan will continue to pay the Participant his/her full benefit until a Domestic Relations Order, as defined above, has been received.

Mr. Washington argues that based on this procedure, Ms. Washington's benefits would not start until after it is determined that her QRDO is valid, and she did not file a QRDO until 2021. Upon review, we find no merit to this argument. This procedure only discusses what occurs when a proposed QRDO is received by the Pension Fund and the participant is already receiving pension benefits. It does not discuss the procedure for when the participant receives a former spouse's benefits,

which is what occurred in the present case. We thus find that this procedure is not applicable to the present case.

Finally, in her brief, Ms. Washington requests costs and attorney's fees for a frivolous appeal. However, because Ms. Washington failed to file a cross-appeal or an answer to the appeal, we are precluded from considering this request. *See Kaye v. Karp*, 19-194 (La. App. 5 Cir. 12/30/19), 286 So.3d 1281, 1288, n.9; *Holmes v. Paul*, 19-130 (La. App. 5 Cir. 10/2/19), 279 So.3d 1068, 1075.

## **DECREE**

For the foregoing reasons, the trial court's November 16, 2021 judgment, which found that Mr. Washington owes Ms. Washington $31,541.46 and which made the judgment in that amount executory, is affirmed.

## **AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 28, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

**22-CA-37**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
LARRY M. AISOLA, JR. (APPELLANT)        JEANNE L. O'BOYLE (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED